SUPREME COURT.  Monroe General Term, December, 1853
*Welles, Johnson* and *T. R. Strong*, Justices.

### DAVIS *vs.* THE PEOPLE.

Where a burglary is connected with a larceny mere possession of the stolen
goods, without any other evidence of guilt, is not to be regarded as *prima
facie* or presumptive evidence of the burglary.

But where goods have been feloniously taken by means of a burglary and they
are immediately or soon thereafter found in the actual and exclusive pos-
session of a person, who gives a false account, or refuses to give any account
of the manner in which the goods came into his possession, proof of such
possession and guilty conduct is presumptive evidence not only that he stole
the goods, but that he made use of the means by which access to them was
obtained.

There should be some evidence of guilty conduct, besides the bare possession
of the stolen property, before the presumption of burglary is superadded
to that of the larcency.

This was a writ of error, brought by the defendant to review
the proceedings of the court of sessions of the county of Mon-
roe, upon the trial of the defendant on an indictment.  The
first count of the indictment was for burglary, in breaking and
entering the shop of the Rochester & Syracuse Railroad
Company at Rochester, by forcibly breaking an outer window
of said shop, with intent to steal, and, stealing therefrom cer-
tain tools, &c, the property of Daniel Penney, and other
property belonging to Thomas Drake.  There was also a count
for larceny, and one for receiving property knowing it to have
been stolen.  The defendant pleaded not guilty.  From the
testimony of the witnesses for the people, the following facts,
among others appeared on the trial : — That on Sunday night,
the 27th of March, 1853, the machine shop of the Rochester &
Syracuse Railroad Company, situate on the railroad in the
city of Rochester, was broken open and entered by forcibly
breaking an outer window of the said shop, and that there was
no other way of entering the shop, except through the broken
window, and that the following articles which were then in
the shop and the property of the persons mentioned in the

indictment, were taken therefrom, viz : — One pea-jacket, two pair of callipers, one two foot rule, one pocket handkerchief, and one square; in all worth some $10.   The district attorney then called, among other witnesses, *George Bradshaw*, who testified that he was a constable of the city of Rochester last March; that he heard of there being a trunk on a boat called the " Wiggins," lying in the canal near the weigh lock in said city of Rochester.   That he went there on Monday or Tuesday in March, 1853, and found a trunk on the boat; that on opening the trunk he found two pairs of callipers and a square but nothing else of any value.   The defendant was not there.   Did not know whom the trunk belonged to.   The tools were taken to the police office, and in a few days delivered to the owners, who proved them to be the same tools taken from the machine shop; and that the time they received the property was some eight or ten days after it was taken.   The boat was lying in the canal about one mile or more from the railroad. The trunk had been broken open before the witness saw it.   A piece of the lock was lying near the trunk.   It had the appearance of being broken open with an axe or hammer and then nailed down.   *Eliza Wright* testified as follows: — I know the defendant John Davis.   He used to come on the boat and stay all night sometimes.   I lived on the boat " Wiggins," last March.   I recollect the time when Bradshaw, the constable, came on the boat for a trunk.   It was on a Monday or Tuesday afternoon in March last.   Three or four days before Bradshaw came, defendant told me he had a trunk that he wished to bring on the boat till he got ready to go and see his mother.   The defendant brought the trunk the morning before Bradshaw found it there.   It was Monday morning.   I think he said he wanted to leave it, and at night he was going away with it on the cars.   I did not open the trunk nor any one but Davis, to my knowledge.   I think the trunk was locked when the defendant brought it there.   I saw it after I got up in the morning and not before.   I did not see defendant bring it there.   On the Sunday night before Bradshaw came he staid on the boat. He went to bed when the rest did, and was in bed when I got

up in the morning, which was between five and six o'clock. He slept in the cabin where we did. After he got up he said he had got his trunk and was going to see his mother. He went away about noon and I never saw him again till I saw him here at the trial. I never saw defendant do any thing with the trunk. There were two other boys staid aboard that Sunday night. One was called Straight and the other Hughes. Hughes did not come aboard that Sunday night till about eleven o'clock or after.

*Sabrina Wright* testified, that the defendant said three or four days before the trunk was brought to the boat, that he had a trunk that he was going to bring there, and then was going to the cars to go home. That defendant said about nine o'clock in the morning that he had got his trunk there. That she saw a trunk there in the morning. This was substantially all the testimony connecting the defendant with the trunk and the stolen property. The counsel for the prisoner then moved that the prisoner be discharged, on the ground that there was no evidence tending to connect the prisoner with the trunk or the articles found in it. That the trunk was not proved in the possession of the defendant. But the court decided that it was a question for the jury. To which decision of the court the counsel for the prisoner excepted.

The counsel for the prisoner then moved that the defendant be discharged from the count in the indictment charging him with the crime of burglary, on the ground that if the jury should find the defendant in possession of the property stolen or a part of it, that of itself was not sufficient to convict him of the crime of burglary. But the court denied the motion, to which decision the counsel for the prisoner excepted. The court charged the jury, among other things, that in cases of larceny, after proof that property had been stolen by some one; the possession of the stolen property by a person immediately or shortly after the commission of the offence, was *prima facie* evidence to charge such person with the crime, and throw the burden upon him of showing how he came to the possession of the property, or rebutting in some way this *prima facie* evidence. That in cases

of burglary, there was a still further presumption of law, that after the prosecution had proved that a burglary had been committed by the breaking into a building and stealing property, and that the stolen property was taken by the means of the burglarious breaking, then the possession of the stolen property immediately after the commission of the crime would be presumptive evidence to charge the person so in possession of the same, with the crime of burglary. In other words, that the stolen property was taken by the defendant in the manner in which it was proved to have been taken. To this charge the counsel for the prisoner excepted. The jury found the defendant guilty on the whole indictment.

*J. H. Grassup*, for the plaintiff in error.

*M. S. Newton* (Dis't Att'y), for the people.

*By the Court*, JOHNSON, J.—The rule that where goods have been stolen and are immediately or very soon thereafter found in the possession of a person, it is *prima facie* evidence that such person was guilty of the larceny, has never been doubted. It is said, however, that mere recent possession, independent of the conduct and declarations of the accused, or of his silence, is very imperfect evidence of guilt, as the apparent possession may have resulted from the malicious act of another (1 *Starkie Ev.* 513, 514.)

In the case of *Commonwealth* v. *Willard*, (1 *Mass. Rep.* 6,) where the indictment was for shop breaking and stealing goods, and a part of the goods stolen were found in the possession of the prisoner, Sedgwick, Justice, in his charge to the jury, stated the rule to be that the proof of the possession was presumptive evidence not only that he stole the whole of the articles taken from the shop, but also of his breaking and entering, as alleged in the indictment. But in that case, it appears that the prisoner refused to give any account of how he came by the goods. In *The People* v. *Frazier*, (2 *Wheeler's Cr. Cas.* 35,) which was an indictment for burglary and larceny, it was held

Davis *v*. The People.

by the Recorder that possession of the goods was presumptive evidence of the larceny, but not of the burglary. The rule is laid down in *Cowen & Hill's Notes*, 432, in accordance with the case in Massachusetts, and it is there said that it is presumed the case of *The People* v. *Frazier* was decided hastily. Neither of the cases cited—and they are the only ones I have been able to find where the question here involved has been passed upon—appears to have been much considered, or is of any great weight as authority. It is certainly extending the rule of presumption to a great length, to make the clearest case of possession, even where the accused gives a false account, or refuses to give any account whatever, of the manner in which he came by the stolen property, evidence not only of the larceny but of the burglary also. The two crimes are not necessarily connected. The larceny may be committed by one, and the burglary by another. There can be no doubt that immediate possession would be competent evidence to go to the jury in connection with other circumstances, to make out the charge of burglary. But that it is of itself sufficient to raise the presumption of anything beyond the larceny can not, I think, be maintained, upon authority or sound reason. Where a person is charged with the offence of larceny alone, unless the property is clearly traced to him and his possession is shown to be *exclusive* as well as recent, the presumption that he took it feloniously does not arise. (*Best on Presumptions*, 307; 22 *Law Lib.* 181.) Finding property in a house to which others have access, where no other possession is shown, is not sufficient to raise the presumption against the owner or chief occupant. Other circumstances must be shown. (*C. & H. Notes*, 426, 7.) And it seems to me in cases where a burglary is connected with a larceny, mere possession of the stolen goods without any other evidence of guilt ought not to be regarded as *prima facie* or presumptive evidence of the burglary. I am of opinion, however, that in a case where goods have been feloniously taken by means of a burglary and they are immediately or soon thereafter found in the actual and exclusive possession of a person who gives a false account, or refuses to give any ac-

count, of the manner in which he came to the possession, proof of such possession and guilty conduct is presumptive evidence not only that he stole the goods but that he made use of the means by which access to them was obtained. There should be some evidence of guilty conduct besides the bare possession of the stolen property, before the presumption of burglary is superadded to that of the larceny. In the present case there is no evidence of any guilty conduct whatever. There is great room for doubt whether the prisoner ever had the goods in his actual custody. True, they were found in his trunk, and if it had been shown that the goods were locked up in it, and the prisoner was in possession of the key, a strong presumption would be raised that he put them there and claimed the possession. But there is nothing to connect him with the goods at all, except the fact of their being found in the trunk by the officers. The trunk was not in the prisoner's custody, but in the midship of a canal boat, in which boat other persons resided and to which any one might have access. The trunk was brought to the boat by the prisoner in the morning, as he informed the persons on the boat, and the witness by whom this is proved testifies that the trunk was locked when she saw it there, about nine o'clock in the morning. It is not shown that the prisoner opened the trunk after he first brought it there, or that he went to it for any purpose. He left the boat before or about noon. The officer who discovered the goods first saw the trunk some time in the afternoon of the same day, or the day after the prisoner left the boat. It then bore unmistakeable evidence of having been broken open by violence. The officer testifies that the lock appeared to have been broken by a hammer or axe, and that a portion of it was lying on the floor of the boat near the trunk and the trunk had been fastened together by nailing. Only a small portion of the goods stolen were in the trunk. It seems to me the law will scarcely presume that the prisoner broke his own trunk open, until it is shown that he had no key to it; especially when it is not in his actual possession when found in this condition, but is in a situation where others might readily do it. This is scarcely the kind of

possession which the law contemplates, in order to raise the presumption even of a larceny.

The fact that a portion of the goods were found in the prisoner's trunk *under such circumstances,* is little if any stronger than it would have been had they been found in some other part of the boat.   And even admitting that the jury were warranted in finding, as a question of fact, that the goods were found in the prisoner's possession, still I am of opinion the judge should have instructed them that possession alone of that character was not sufficient to raise the presumption that possession was obtained by means of a burglary committed by the prisoner.

On this ground, I am of opinion the conviction and sentence should be reversed, and a new trial granted.

Judgment reversed.

---

SUPREME COURT.   Albany General Term, December, 1853.
*Parker, Wright* and *Harris,* Justices.