[No. 10,682.—In Bank.]
Feb. 2, 1882.

## THE PEOPLE *v.* JOHN HURLEY.

POSSESSION OF STOLEN PROPERTY — LARCENY — PRESUMPTION.—To justify the inference of guilt from the fact of possession of stolen property, it must appear that the possession was personal, and that it involved a distinct and conscious assertion of possession by the accused.

ID.—ID.—ID.—The better opinion seems to be, that the presumption arising from possession alone is completely removed by the *good character* *alone* of the prisoner.

ID.—ID.—ID.—A finding of stolen property in the prisoner's house or apartment, is equally competent in evidence against him as a finding upon his person; but the house or room must be proved to be in his exclusive occupation. If the property were in a locked-up room or box, of which he kept the key, it would be a fair ground for calling upon him for his defense. But if it were only found lying in a house or room in which he lived jointly with others equally capable of having committed the theft, it is clear that no definite presumption of guilt could be made.

ID.—ID.—ID.—The bare fact of finding the hides of cattle, that had been stolen, in the defendant's barn, which was shown to have been open to any one who chose to enter it, in the absence of any evidence tending to prove that he knew or had any reason to suppose that such hides were there, is not sufficient to justify the inference of guilt; and until his declaration, that he knew nothing about the hides being there, was shown to be false, he was not called upon to give any explanation as to how they came there.

APPEAL from a judgment of conviction, and from an order denying a new trial in the Superior Court of Humboldt County. HAYNES, J.

No briefs on file.

SHARPSTEIN, J.:

The fact that the hides of the cattle alleged to have been stolen were found in the defendant's barn, is not controverted. And we think that they were found there within a sufficiently recent period, after the loss of the cattle, to answer the requirements of the law in that respect.

But that is not all that is required to warrant the inference that the defendant stole the property. To justify that inference it must further appear that the possession was personal, and that it involved a distinct and conscious assertion of possession by him. And even then such possession may be explained. (Whart. Cr. Ev., § 758.) Now the facts as they appear in evidence in this case are that the cattle alleged to have been stolen were first missed on the twenty-fourth of October, 1879, and their hides were found in the defendant's barn on the twenty-seventh of November, 1879.

Within a few days after the cattle alleged to have been stolen were missed, and before the discovery of their hides, the defendant killed some cattle, which he, his wife, son, and daughter testify were his own; and none of them are contradicted or impeached. Nor do we discover anything suspicious in the conduct of the defendant as described by the witnesses who saw him at the time when he was killing these cattle, or disposing of their carcasses. And the cattle which he is proved to have killed were so unlike those alleged to have been stolen, as to preclude the idea of his having mistaken the latter for his own. He slaughtered them as he naturally would if killing his own; called in one neighbor to assist him; invited another to inspect his barn with him while some of the beef was suspended there; and disposed of it as he had been in the habit of disposing of beef before. The officer who arrested the defendant testifies that when the hides were brought out of the barn, the "defendant said that it was a put-up job on him; that he knew nothing about the hides being in his barn."

The barn was never locked, and the neighbors went into it whenever they chose, which, one of the witness stated, was almost daily. The hides, when discovered, were hanging upon a pole, visible to all who might enter the barn. The defendant and several members of his family, together with one or more other witnesses, testify that they entered the barn repeatedly during the period intervening the loss of the cattle alleged to have been stolen and the discovery of the hides, and that during that intervening period they saw no hides there, although they thought they should have seen them if there. There is no conflict in the evidence upon any material point. As we view it, there is none, except the bare fact of the discovery of the hides of the missing cattle in the defendant's barn, which militates in any degree against him.

The assertion that the recent possession of stolen goods in a case of larceny raises a presumption that they were stolen by the possessor, is not strictly accurate. The cases in which that has been said are those in which it also appeared that the possessor acquired the possession by his own act, or with his own concurrence or knowledge. If it had been shown in this case that the defendant placed these hides in his barn, or caused them to be placed there, or knew that they were there, or exercised any acts of possession over them, the case would be essentially different from what it now is. His explanation "that he knew nothing about the hides being in his barn" was the only one which he could give unless he did know something about their being there; and the only way to prove his explanation false was to prove that he did know something about it. But there is no evidence which tends to prove that he did. If true, his explanation was as satisfactory as any ever given of the possession of stolen property; and it was incumbent on the prosecution to prove it untrue before asking a conviction.

In Cowen & Hill's notes to Phillips on Evidence, 530, it is said, "that although a finding even in the prisoner's house is admissible, yet where there is not a more direct possession shown, and there are other inmates in the house capable of stealing the goods, this finding *per se* would not raise the presumption. Other circumstances should be shown. And the reason is stronger of a finding in the prisoner's open shop."

And in a note following that from which the above quotation is taken, it is said: "The. better opinion seems to be that the presumption arising from possession alone is completely removed by *the good character alone* of the prisoner." The good character of the defendant in this case was testified to by witnesses who stated that they had known him fourteen years, and no attempt was made to rebut their testimony.

In *Crozier* v. *The People* (1 Park. Cr. 447), a part of the goods alleged to have been burglariously stolen were found in the unlocked trunk of C., on board of a steamboat. The Court said that "the fact that a portion of the goods were found in the prisoner's trunk *under such circumstances*, is little if any stronger than it would have been had they been found in some other part of the boat."

And in a case where stolen tobacco was found in an out-house of the prisoner with tobacco belonging to him, and who claimed that the stolen property was his own, it was held that in the absence of proof that the tobacco did not resemble his own, a legal inference of the guilt of the prisoner could not be drawn from such possession. (*State* v. *Smith*, 2 Ired. (N. C.) 402.)

Burrill states the law as follows: "The possession must be exclusive. A finding of stolen property in the prisoner's house or apartment, is equally competent in evidence against him, as a finding upon his person. But the house or room must be proved to be in his exclusive occupation. If the property were in a locked-up room or box, of which he kept the key, it would be a fair ground for calling upon him for his defense. But if it were only found lying in a house or room in which he lived jointly with others equally capable of having committed the theft, it is clear that no definite presumption of guilt could be made." We do not think that the bare fact of finding the hides of cattle that had been stolen in the defendant's barn, which is shown to have been open to any one who chose to enter. it, in the absence of any evidence. tending to prove that he knew or had any reason to suppose that such hides were there, sufficient to justify the inference which the jury must have drawn from it, in order to find the defendant guilty. And we also think that until his declaration that he knew nothing about the hides being

there was shown to be false, he was not called upon to give any explanation as to how they came there. If he did not know that they were there, he could not explain how they came to be there. As we view it, this case is much weaker for the prosecution than either *The People* v. *Noregea* (48 Cal. 123), or *The People* v. *Swinford* (57 id. 86), in both of which the judgments were reversed on the ground of insufficiency of the evidence to justify the verdict.

Judgment and order reversed and cause remanded for a new trial.

MYRICK, J., MORRISON, C. J., and THORNTON, J., concurred.