## THE STATE v. DREW, Appellant.

**Division Two, February 1, 1904.**

1. **Criminal Law:** RECENT POSSESSION OF STOLEN PROPERTY: PRE-
SUMPTION OF GUILT.   To raise the presumption of guilt from the
recent possession of stolen property, the stolen goods must be
found in the exclusive possession of the prisoner.  He can only
be required to account for the possession of things which he
actually and knowingly possesses.  And the finding of a piece
of dress goods on the premises of a man of a family, without
showing his actual, conscious possession thereof, discloses only
a prima facie, constructive possession, and is not such a pos-
session as will justify a presumption of guilt.

2. ———: ———: CONSPIRACY.   Where, in a prosecution for bur-
glary and larceny, there is no evidence showing any confed-
eracy or conspiracy between defendant and another party to
commit the crime, it is error to admit in evidence articles
taken under a search warrant from such other party's house.

3. ———: STATEMENTS OF DEFENDANT: INSTRUCTION.  An instruction
in regard to statements made by a defendant should not as-
sume that he made such statements, and it should be limited to
statements proved at the trial.

Appeal from Chariton Circuit Court.—*Hon. Jno. P.
Butler,* Judge.

REVERSED AND REMANDED.

*J. C. Wallace* for appellant.

(1)   Constructive possession of the piece of goods
is not sufficient to hold defendant to a criminal liability,
nor can he be required to account for its presence in his
house until he is shown to have had actual knowledge
of its presence there.   State v. Castor, 93 Mo. 242.   (2)
Instruction 5 assumes as a fact that the State had proven
conversations of defendant after the alleged offense had

been committed, thus taking from the jury the right to pass upon that matter as a fact in the case. It is open to the further objection that the conversations to which the jury's attention was called were not limited to such as were shown in evidence on the trial and relating to the issues in the case, but to conversations without regard to circumstances or relevancy.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The evidence authorized the instruction upon presumption of guilt, by reason of being in possession of recent stolen property. (2) The evidence is sufficient to warrant the inference that all of the goods so found, both in the home of the defendant and the home of Frank Gamble, came from the burglarized store. And when considered along with the declaration of defendant as to where he obtained the goods, is sufficient to connect him with the offense.

GANTT, P. J.—The defendant and one Frank Gamble were charged in an information filed by the prosecuting attorney of Chariton county with burglary and larceny of the store of Joseph Miles in the town of Dalton in said county on the nineteenth of May, 1901. A severance was granted and the defendant duly arraigned at the September term, 1901. At the February term, 1903, defendant was put upon his second trial for this offense, and convicted of both the burglary and larceny and sentenced to the penitentiary for a term of five years. His motions for new trial and in arrest of judgment were overruled and exceptions duly saved and an appeal granted to this court.

The evidence on which this conviction rests is substantially as follows:

Mr. Miles, the prosecuting witness, had a general merchandise store in the town of Dalton, Chariton

county, on Sunday, the nineteenth of May, 1901. When he left the store Saturday night the doors were locked and fastened, but the windows had no fastenings. On Monday morning when Mr. Miles returned to his store, he found a big light in the front door broken and a lot of empty shoe boxes on the floor and a lot of dry goods gone. He testified he missed some shoes, worsted goods, tobacco and some meat. The shoes were branded "V. C." on the box and the shoes. The worsted dress goods were of two colors, brown and of a greenish color. Some percales, red and white striped, were also missing. The goods taken were worth between $50 and $100. A piece of percale was shown the witness and he testified he *thought* that was taken that night, but on objection this answer was excluded. Other dry goods were exhibited to the witness, but counsel for defendant objected to the identification of these unless the State first established that these were found at the house of defendant. The objection was overruled and defendant excepted and Mr. Miles answered they came out of his store and were his goods. Some shoes were also shown the witness and he said they looked like his and had the same marks and brands. He testified he got all of the foregoing goods, except the one remnant of percale, out of the house of Gamble. Thereupon defendant by his counsel moved the court to strike out all of the evidence as to the goods obtained from Gamble's house, which motion the court overruled and defendant duly excepted. He testified he got these goods under a search warrant from the houses of Gamble and defendant some two or three weeks after the burglary was committed. He further testified that defendant said he, Miles, would have to show where defendant got the goods found at his house; that they had got it from Mrs. Cook, who also had a store in the town. On cross-examination Mr. Miles admitted he had testified on a former trial of this case that his store was burglarized on Saturday night instead of Sunday night as he now

stated.    That he could not identify the one piece of per-
cale found in defendant's house by any mark, but only
by its general appearance.    He would not positively say
this was a piece of his goods.    That he could not state
that the goods in his store were exactly like this piece.
It was simply a piece of red and white percale he had
in his store at that time.    When he went to defendant
Drew's house he also found a little piece of white goods
there.    He did not take that at the time, neither did he
take this piece of percale.    He did not take the percale
because defendant said he got it from Mrs. Cook and he
thought he would see her before taking it.    Defendant
said he got the white goods also from Mrs. Cook.    This
piece of white goods and this piece of percale was all he
found in defendant's house.    He did not claim the white
goods, which the evidence of Mrs. Cook and defendant's
wife conclusively established came from Mrs. Cook's
store.    Mrs. Cook testified she sold defendant's wife the
white goods on Saturday before the burglary, but did
not sell defendant or his wife the percale; that she never
had a piece like it in her store.

Mr. Veatch, the sheriff, testified he served the
search warrant and got the piece of percale at defend-
ant's house.    The trunk was locked and defendant's
daughter  brought her  mother  the  key to the  trunk
and he found this piece of percale in that trunk.    De-
fendant was not present at the time.    Witness says that
there was a piece of white goods and the percale in his
hands when defendant and his wife said they got the
goods from Mrs. Cook.    Does not think they said *either*
*piece particularly.*    After Mrs. Cook said they did not
get the percale from her an officer went back to defend-
ant's house and got it.    Until then Mr. Miles was un-
certain that it was his.

On the part of defendant the evidence tended to
prove that Mrs. Gamble used Mrs. Drew's sewing ma-
chine and, as a recognition of their kindness, gave the
piece of percale to Julia Drew, the fifteen-year-old

daughter of defendant, and that it with the white goods purchased from Mrs. Cook was in an unlocked bureau drawer at defendant's house when the officer found and afterwards took it. Mrs. Gamble gave this piece to Miss Drew on Saturday before the defendant was arrested about the middle of June, 1901. There was also evidence that Mrs. Gamble's father bought the goods in Kansas City and gave it to his daughter. Various errors are assigned for reversal of the judgment.

Among other instructions, the court gave the following:

"2. The court instructs the jury that if you believe from the evidence beyond a reasonable doubt that on or about the nineteenth day of May, A. D. 1901, at the county of Chariton in the State of Missouri, some one did feloniously and burglariously break into and enter the storehouse and building of Joseph Miles and steal therefrom goods and chattels mentioned in the information or any of said goods and chattels, and that soon thereafter said goods and chattels or any part thereof were found in the exclusive possession of Hamp Drew, then and in that event, the law presumes that the defendant is guilty of both burglary and the larceny, and unless the defendant has accounted for the possession of said goods, to your reasonable satisfaction, or rebutted the presumption arising from the recent possession of said goods, as defined in these instructions, you should find him guilty as charged in the information; but the court instructs you that the defendant may rebut the presumption of guilt arising from recent possession of stolen property or explain his possession by either direct evidence or attending circumstances or the character or habits of himself by some other mode equally satisfactory as to the innocence of the accused."

I. This instruction is challenged because counsel for defendant insists that the testimony does not show an actual possession by defendant of any of the stolen

goods, but *a mere constructive possession* by reason of the fact that one piece of percale which the prosecuting witness thought was his because it resembled that which he had in his store was found in a trunk in the house of defendant, which his daughter testified was given to her only a day prior to the burglary by Mrs. Gamble.

This court, in State v. Castor, 93 Mo. 242, adopted Greenleaf's statement of the law on this point (3 Greenl. Evid., secs. 32 and 33), wherein he says: "But to raise the presumption of guilt from the possession of the fruits of the crime by the prisoner, it is necessary that they be found in his exclusive *possession. A constructive possession,* like constructive notice or knowledge, though sufficient to create a *civil* liability, is not sufficient to hold the party responsible to a *criminal* charge. He can only be required to account for the possession of things which he *actually* and *knowingly* possessed; as, for example, where they are found upon his person, or in his private apartment, or in a place of which he keeps the key."

In Castor's case the evidence showed the stolen goods were found in his trunk, but it was shown that his employer had access to the trunk; that he had lent the key to another to get some blacking and a brush and the key remained in the hands of the borrower for four days. And it also appeared that the trunk was often left unlocked in the house of the owner of the stolen goods and the trunk could be unlocked by a cupboard key and could have been unlocked by another familiar with the *locus in quo.* In these circumstances it was ruled that defendant's possession was not exclusive. That decision has been approved by this court. [State v. Baker, 144 Mo. l. c. 329.]

In State v. Belcher, 136 Mo. l. c. 137, it was said: "The recent possession of stolen property raises a presumption of guilt, but what constitutes recent possession which will justify this instruction is a preliminary question for the court. It is the settled law of this court

that to raise this presumption the stolen goods must be found in the *exclusive possession* of the prisoner." [State v. Castor, 93 Mo. 242; State v. Warford, 106 Mo. 55; State v. Scott, 109 Mo. 226; State v. Owsley, 111 Mo. 450.]

In Belcher's case, as in this, the larger part of the goods were found in the possession of another, one Edwards, and the remainder found in the home of the defendant's mother, and there was no evidence to indicate that defendant had any other possession than that shared by the family in common save and except as to a pair of overalls and a pair of shoes, and it was a question whether these were a part of the stolen goods, and it was not held to be exclusive or recent enough to justify this instruction.

In State v. Warford, 106 Mo. l. c. 63, it was said by Judge MACFARLANE, "It would be pushing the rule too far to require of one accused of a crime an explanation of his possession of the stolen property, when such possession could also, with equal right, be attributed to another."

In this case there was no evidence that defendant knew of the possession by his daughter or wife of this piece of dress goods. The fact that it was in the house of which he was the head was at most merely a constructive possession, especially when the character of the goods, an article of female attire of whose existence the father might well be and generally is ignorant until made up, is taken into consideration. The father was not at home when the search was made and the piece of goods was found in the trunk or the drawer of a bureau. There was also independent evidence that this piece of goods was in defendant's house prior to the burglary. It is evident that the State's case rested upon the fact that this one piece of percale was found in defendant's house some three weeks after the burglary of Miles' store. Although there was a large

amount of dress goods, tobacco, meat, shoes, etc., stolen and defendant's premises were carefully searched by the officer under the search warrant, no part of the stolen goods were found there except this piece of percale, if it be conceded that it was a part of the stolen goods, and no other evidence connecting him with the crime. While it is true Mr. Miles testifies that defendant said they got the percale from Mrs. Cook, the officer who was present and who testified for the State says he had both the white goods and the percale in his hands when defendant said they got the goods from Mrs. Cook and did not particularize which piece. It was shown that as to the white goods this statement was true.

One proposition then is presented. Was the possession of the wife or daughter in the circumstances detailed such an *exclusive possession* in defendant as justified this instruction? Was it anything more than that *constructive* possession which every head of a family is presumed to have of property in his house or on his premises?

In Regina v. Pratt, 4 Foster and Finlason 315, Chief Baron POLLOCK, whose learning and immense experience give great weight to his judgments, laid it down that the mere fact of the goods being on the prisoner's premises, which might be without his knowledge or assent, does not prove *possession,* much less receiving by him, for another might have put the goods on the premises without his knowledge, and he directed the jury to acquit.

So in State v. Owsley, 111 Mo. 450, in which two stolen revolvers were found in the possession of Mrs. Owsley, the wife of the defendant, but he was not at that time living with her, it was ruled that the possession of the wife could not be regarded as the exclusive possession of the husband. While the possession of the wife was the possession of the husband at common law for the purposes of civil liability, that law also recognized and held the wife as a criminal agent for crimes

committed by herself not in the presence of her husband, and even in his presence, when she alone was the active and inciting party to the offense.    [State v. Ma Foo, 110 Mo. 7.]

In our opinion the mere fact of finding stolen articles on the premises of a man of a family without showing his actual conscious possession thereof, discloses only a prima facie constructive possession and is not such a possession as will justify a presumption of guilt by reason thereof.    It is within the common experience that many honest and worthy men have dishonest children and servants, and to indulge the presumption that because goods are found on their premises which turn out to have been stolen, without going further and showing an actual conscious and exclusive possession of such goods in the head of the family, would result oftentimes in punishing the innocent for the guilty.

There is no occasion for pushing the presumption to any such length.    Kept within its proper limitations it is a salutary principle and reasonable, but given a latitudinous constructive interpretation it is unreasonable, and would work grave injustice.    [People v. Burley, 60 Cal. 74; Cowen and Hill's Notes to Phillips on Ev., 530; Wharton's Crim. Evidence, sec. 758, and cases cited; Turbeville v. State, 42 Ind. 1. c. 495; Roscoe's Crim. Ev., 18; Field v. State, 24 Tex. App. 422; Burrill on Cir. Ev., 450; Lehman v. State, 18 Tex. App. 174.]

In our opinion there was no such actual, conscious, exclusive possession of this piece of percale by the defendant as would justify the giving of instruction No. 2 on behalf of the State.

II.    As there was a total failure to show any confederacy or conspiracy between the defendant and Gamble, the court erred in admitting in evidence the goods taken under the search warrant from Gamble's house. It could not fail to have a prejudicial effect on defendant.    In the absence of evidence tending to prove a con-

spiracy, this evidence threw no light on the guilt or innocence of defendant, but was irrelevant and incompetent. ·As the case may be re-tried it may be remarked that if the jury should find that Mrs. Gamble gave defendant's daughter the piece of percale three weeks after the burglary, and that prior to such gift defendant had no possession· of the percale, such a second-hand possession by the daughter would not create a presumption of guilt. [State v. Warford, 106 Mo. 55; State v. Scott, 109 Mo. 226.]   Having explained his possession it devolved upon the State to show his explanation was false or improbable.

III.   The fifth instruction is open to the criticism of defendant that it assumes that defendant had made statements adverse to his interest and that it should have been limited to conversations proved on the trial. These defects can be readily remedied, however, if it shall be deemed advisable to further prosecute the case.

For the errors noted, the judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed.   All concur.

