Points Decided.

'(June 30, 1921.)

STATE, Respondent, v. FRANK SULLIVAN, EDWARD
GRAUTMAN, FRANK EDWARD WALSH and C. W.
DARCEY, Appellants.

[199 Pac. 647.]

BURGLARY—PROOF OF CORPUS DELICTI—WHEN POSSESSION OF STOLEN
GOODS, BURGLARIOUS TOOLS OR ESCAPE AFTER ARREST MAY BE
SHOWN—CHARACTER OF ENTRY TO CONSTITUTE BURGLARY—WHEN
ADVISORY INSTRUCTION TO ACQUIT SHOULD BE GIVEN — WHEN
VERDICT OF GUILTY AND JUDGMENT OF CONVICTION WILL BE SET
ASIDE.

1. It is a well-settled principle of criminal law that a convic-
tion for crime cannot be had unless the *corpus delicti,* that is,
the fact that a crime has been actually perpetrated, is first estab-
lished.

2. Where proof of the *corpus delicti* is made by circumstantial
evidence, it should be established by proof of such character
as will exclude all uncertainty.

3. Upon a prosecution for burglary, it is competent to show
that the property alleged to have been stolen was found in the
possession of the defendant, provided that the burglarious entry
has been proven.

4. To warrant an inference of guilt from the possession of
personal property charged to have been recently stolen, it should
be a distinct and conscious possession on the part of the accused.

5. Possession of burglarious tools by the accused, or his escape
after arrest, is competent evidence against him upon a trial on a
charge of burglary, provided it is shown that a burglary has been
committed.

6. The "breaking" required at common law to constitute the
crime of burglary is not an essential element of the crime in
this state, under C. S., sec. *8400; but the entry, in either de-*

Publisher's Note.
3. On the question as to whether possession of recently stolen
property is evidence of burglary, see notes in 19 Ann. Cas. 1281; 12
L. R. A., N. S., 199.
6. Essential elements of burglary, see note in 2 Am. St. 383.
Breaking and entry in burglary, see note in 139 Am. St. 1046.

gree of burglary, must be with intent to commit grand or petit larceny or a felony, and such intent must exist at the time of the entry.

7. Under C. S., sec. 8963, if the court deems the evidence insufficient to warrant a conviction, it should advise the jury to acquit; if the jury disregards such instruction, upon motion for a new trial the verdict should be set aside on the ground that it is not sustained by the evidence.

8. Proof of the charge in criminal cases involves proof of two distinct propositions; first, that the act itself was done, and, secondly, that it was done by the person charged; and the defendant is not required to answer a charge against him until the prosecution offers sufficient evidence to clearly establish the fact that the crime charged has been committed.

9. If the proof fails to establish either of the elements necessary to constitute the crime charged, the verdict and judgment of conviction thereon will be set aside.

APPEAL from the District Court of the Fourth Judicial District, for Lincoln County. Hon. H. F. Ensign, Judge.

Appellants were convicted of the crime of burglary in the first degree, and they appeal. *Reversed* and *remanded,* with instructions for new trial.

C. O. Stockslager, Frank T. Disney and Hawley & Hawley, for Appellants.

While the information charges the defendants with burglarizing the store of Gorman Brothers, the evidence fails to show that the store was burglarized by the defendants at any time or that the crime of burglary was committed at all in connection with the said store, and the evidence fails to show that the store was entered by anyone at any time for the purpose of larceny or that any of the goods alleged to have been stolen might not have been purchased in any store carrying the same line of goods in Idaho or elsewhere. (C. S., secs. 8400, 8945, 8995; *State v. Burke,* 11 Ida. 420, 83 Pac. 228; *People v. Flannelly,* 128 Cal. 83, 60 Pac. 670; *People v. Forsythe,* 65 Cal. 101, 3 Pac. 402; *Bird v. United States,* 187 U. S. 118, 23 Sup. Ct. 42, 47 L. ed. 100; *Hudson*

*v. State,* 101 Ga. 520, 28 S. E. 1010; *Walker v. State,* 139 Ala. 56, 35 So. 1011.)

That the defendants escaped from the county jail is a circumstance tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstance of the particular case. (*People v. Flannelly, supra; People v. Forsythe, supra.*)

Flight is a circumstance tending to show guilt, but it is only a slight circumstance. (*Hudson v. State, supra.*)

Roy L. Black, Attorney General, James L. Boone, Dean Driscoll and S. E. Blaine, Assistants, and H. D. Heist, Pros. Atty., for Respondent.

Possession of stolen goods, together with all other circumstances connecting defendant with the crime of burglary, must be considered. (9 C. J. 1070, 1082; *Jordan v. State,* 119 Ga. 443, 46 S. E. 679; *State v. James,* 194 Mo. 268, 5 Ann. Cas. 1007, 92 S. W. 679; 4 R. C. L., sec. 34, p. 440; *Collins v. People* (Colo.), 193 Pac. 634; *Smith v. State,* 85 Tex. Cr. 355, 212 S. W. 660; *People v. Morrell,* 28 Cal. App. 729, 153 Pac. 977; *State v. Willoughby,* 180 N. C. 676, 103 S. E. 903; *State v. Sanford,* 8 Ida. 187, 67 Pac. 492.)

Where facts warrant a finding of larceny and the circumstances of that larceny show that it could not have been committed without an unlawful entry, the jury is justified in inferring that by whatever means the entry was effected the appellants made use of the same. (*People v. Lang,* 142 Cal. 482, 76 Pac. 232; *State v. Sparks,* 40 Mont. 82, 135 Am. St. 608, 19 Ann. Cas. 1279, 105 Pac. 87; *People v. Morrell, supra; Cline v. State,* 21 Ariz. 554, 192 Pac. 1071.)

Possession of burglarious tools is legal evidence tending to connect an accused with the crime. (9 C. J., sec. 131, p. 1073; 4 R. C. L., sec. 34, pp. 440, 441.)

The escape or attempted escape of the accused may be considered by the jury to show consciousness of guilt. (16 C. J., sec. 1073, p. 554.)

Where there is substantial evidence to support the verdict and the judgment founded thereon, it has been the consistent holding of this court not to disturb a judgment founded on the verdict. (*State v. Steen*, 29 Ida. 337, 158 Pac. 499; *State v. Askew*, 32 Ida. 456, 184 Pac. 473; *State v. Ford*, 33 Ida. 689, 197 Pac. 558; *State v. White*, 33 Ida. 697, 197 Pac. 824; *State v. Colvard*, 33 Ida. 702, 197 Pac. 826.)

LEE, J.—The appellants were jointly informed against by the prosecuting attorney of Lincoln county, Idaho, on March 26, 1919, charged with having burglariously entered the store building of Gorman Brothers, situated in the town of Jerome, in said county, which crime was alleged to have been committed on September 3, 1918. Appellants entered a plea of "not guilty." The court denied the motion of appellants Grautman and Walsh for a separate trial, and appellants were jointly tried upon said information and by the jury found guilty of burglary in the first degree, as charged in the information, and sentenced to a term in the penitentiary for not less than seven nor more than fifteen years. From this verdict and judgment they appeal to this court, and assign numerous errors for a reversal of said judgment.

The errors relied on are: That the court erred in refusing to grant defendant's motion for an instructed verdict; that the court erred in pronouncing judgment upon defendants, and in sentencing each of them to the penitentiary, particularly for the reason that there was not sufficient evidence introduced during the trial to warrant a conviction of the defendants; and that the verdict of the jury was against the law and the evidence.

The record in this case contains much irrelevant matter, including the testimony taken at the preliminary hearing and the examination of the jurors on their *voir dire* at the trial. Counsel for appellants disclaim responsibility for this objectionable matter appearing in the record, and it does not appear who is responsible for incorporating the same into

the record on appeal; but we call attention to the fact that it does not conform to the rules and practice of this court with reference to records on appeal, so that the error may not be repeated.

The state's evidence tends to show that defendants were camped about a mile and a half from the business part of Jerome, and about half a mile from the Oregon Short Line station, near the main line of said railroad company; that on the fourth day of September, 1918, they were arrested at their said camp by the town marshal of Jerome, who at the time of such arrest made an examination of the same and found thereabouts several articles, such as clothing, groceries, a package of blank keys, files, saws, drills and sundry other articles. The arrest was made without any complaint having been made or warrant issued, but upon the request of the occupant of the premises to the town marshal to go to this place and "run out a lot of hoboes." The officer making the arrest, after taking possession of the various articles found about this camp, instituted a search for an owner; meeting Jerry Gorman, one of the copartners of Gorman Brothers, upon the street, he asked him if he had lost goods of any kind from his store, to which Gorman replied, "None that I know of." He proceeded along the street to where the marshal exhibited to him a sack of groceries which had been gathered up at this camp; after he had looked them over, Gorman said that a number of the articles of groceries were brands that Gorman Brothers handled in their store, and it looked to him "as if he had been touched." The two then proceeded to the store, and the officer spoke about some shirts of a particular brand, of which the witness had five boxes similar to the shirt mentioned; upon an examination of the boxes it was found that one of them was empty. Later it was found that two of the cartons containing shoes were empty, and Gorman identified shoes taken from defendants as shoes like those in the stock of Gorman Brothers. The witness testified that his firm had the exclusive agency for selling in the town of Jerome this partic-

ular brand of shoes that had been taken from some of the defendants, or from the camp where they were arrested, and further, that he had never sold these particular shoes; he gave the same testimony with regard to a number of the other articles of clothing that had been recovered from this camp.

The copartnership of Gorman Brothers consisted of two brothers, Jerry and Anthony Gorman; during the summer months Anthony Gorman spent the greater part of his time cultivating a tract of farm land near by. The two brothers and Miss Shirley Gorman, a daughter of Jerry, were the only persons who sold merchandise out of this store; Anthony Gorman and Miss Shirley Gorman were only engaged as sales-people occasionally, or at such times as they were not engaged at other occupations. All three of these witnesses testified that they did not sell the articles in question.

It further appears that there was no system of bookkeeping by which a record of the articles sold was kept, and the last inventory of stock taken prior to the commission of this alleged burglary was in the May preceding. There is no evidence in the record to show that any of these appellants had been near this store at or near the time of the alleged burglary. The witness Shroll testified that he was working on the section near Jerome, and on going west, the day before the appellants were arrested, he met them going east, in two groups and some four miles apart.

There is no evidence in the record tending to show that there was ever a burglarious breaking or entry into the store building of Gorman Brothers, either in the daytime or at night, and the only evidence upon which this conviction rests is that the articles of food and clothing found in the camp of these appellants were articles similar to those carried by Gorman Brothers; that Gorman Brothers, upon having their attention called to these articles which had been found at this camp, a search was instituted and certain cartons or containers were found empty upon the shelves of this store building; and that the three persons who had

access to this store had no recollection of ever having sold the particular articles in question.

It is a well-settled principle of the criminal law that a conviction for crime cannot be had unless the *corpus delicti* can be established; that is, until the fact that the crime has been actually perpetrated is first established. (1 Bouvier's Law Dictionary, p. 686.)

Proof of the charge in criminal causes involves the proof of two distinct propositions; first, that the act itself was done, and, secondly, that it was done by the persons charged and no others; in other words, proof of the *corpus delicti* and of the identity of the persons. (3 Greenleaf on Evidence, sec. 30.) Before there can be a lawful conviction for a crime, the *corpus delicti*—that is, that the crime charged has been committed by someone—must be proved. (*Sanders v. State,* 167 Ala. 85, 52 So. 417, 28 L. R. A., N. S., 536; *Bines v. State,* 118 Ga. 320, 45 S. E. 376, 68 L. R. A. 33, and note; *Carlton v. People,* 150 Ill. 181, 41 Am. St. 346, 37 N. E. 244.)

A defendant is not required in any case to answer a charge against him in the absence of evidence on the part of the prosecution sufficient to establish the *corpus delicti.* (*Sanders v. State, supra,* and cases cited under note; 68 L. R. A. 45, and cases cited under note 3.)

The rule laid down by the early English authorities, such as Lord Hale and Lord Stowell, that the *corpus delicti* must be proved by direct or positive testimony before the accused could be convicted of the offense charged has been somewhat modified by the later decisions, so that it is no longer required that direct and positive evidence is necessary to prove the *corpus delicti.* But the authorities still all hold that where the proof is made by circumstantial evidence, it must be established so as to positively exclude all uncertainty, and be sufficient to satisfy the understanding and conscience of the jury beyond a reasonable doubt; or, as expressed by many of the writers, "The *corpus delicti* ought to be proved either by direct testimony or by presumptive

evidence of the most cogent and irresistible kind." (*State v. Williams*, 52 N. C. 446, 78 Am. Dec. 248, and note; *People v. Jones*, 31 Cal. 566.)

The general rule as to the burden of proof in criminal cases requires the state to prove beyond a reasonable doubt the offense charged in the information; and if the proof fails to establish any of the essential elements necessary to constitute a crime, the defendant is entitled to an acquittal. (8 R. C. L., sec. 163, p. 170; *State v. Young*, 52 Or. 227, 132 Am. St. 689, 96 Pac. 1067, 18 L. R. A., N. S., 688; *Hollywood v. State*, 19 Wyo. 493, Ann. Cas. 1913E, 218, 120 Pac. 471, 122 Pac. 588.)

Counsel for respondent contend that the possession of stolen goods, together with all other circumstances connecting the defendants with the crime, is sufficient to convict of burglary, and cite in support thereof a formidable array of authorities. But upon an examination of these authorities, it will be found that they are all predicated upon the assumption that the burglarious entry has been proven. Thus, 9 C. J., sec. 127, p. 1070, says: "As tending to show intent, and to connect defendant with the burglary, it is admissible for the state to prove that he was afterward found in possession of the property stolen at the time of the burglary, and to introduce the property itself in evidence, *if the breaking and entry are proven, and if the property is sufficiently identified.*" At page 1080 it is said: "To sustain a conviction, the property must be sufficiently identified as that stolen at the time of the burglary. Where guilt of burglary depends on possession of property stolen, the identity of the goods with those stolen must be established beyond a reasonable doubt. Evidence of possession of stolen goods by defendant will not support a conviction for burglary unless the breaking and entry are clearly shown." To the same effect is 4 R. C. L., sec. 34, p. 440, where it is said: "It is always competent as bearing on the question of the defendant's guilt to show that property stolen from the premises laid in the indictment was recently in the possession

of the defendant, or in some person who is shown to have taken part in the burglary, or who could have obtained possession of it only from the defendant, *provided it is identified with reasonable certainty, and provided that the burglary and larceny are shown to have been parts of the same transaction.*"

Respondent also contends that where facts warrant a finding of larceny, and the circumstances of the larceny show that it could not have been committed without an unlawful entry, the jury is justified in inferring that by whatever means the entry was effected, the appellants made use of the same. The weakness of this contention lies in the fact that there is no competent proof that the store in question was burglarized. If the goods alleged to have been stolen were sufficiently identified to establish the fact of a larceny of such goods from Gorman Brothers, that would not be sufficient to establish a burglarious entry of the building. The crime of burglary, as it existed at common law, has been greatly modified in this state by statute. C. S., sec. 8401, declares that every burglary committed in the night-time shall be burglary in the first degree, and every burglary committed in the daytime is burglary in the second degree. The breaking that was required at common law is no longer an essential element of the crime in this state; but under C. S., sec. 8400, the entry, in either degree, must be "with intent to commit grand or petit larceny or any felony." This intent must exist at the time of the entry, so that under the provisions of our statute defining burglary, larceny from a building will not constitute the crime unless the entry was made with such intent.

It is next insisted that the possession of burglarious tools was evidence tending to connect the accused with the crime. It should be borne in mind that the possession of burglarious tools, as evidence in connection with a charge of burglary, can only be considered when a burglary is first shown to have been committed.

It is also urged that an escape or attempted escape by the accused may be considered by the jury as tending to show a consciousness of guilt. The authorities quite generally hold that an attempt to escape may be shown in connection with other facts and circumstances tending to show guilt, but here again it may be observed that an attempted escape may only be shown where the fact that a crime has been committed, for which the accused is being tried, has been shown.

Finally, it is insisted that where there is substantial evidence to support the verdict and judgment founded thereon, this court has consistently held that it will not disturb the judgment. But there is no holding by this court or any court that a judgment of conviction for so grave an offense as burglary in the first degree, which carries a maximum penalty of fifteen years' imprisonment, can be sustained on a record which fails to establish with any reasonable degree of certainty that the crime charged was ever committed by anyone. In the case of *State v. Blank,* 33 Ida. 730, 197 Pac. 821, this court said:

"When from an examination of the entire record it clearly appears that a defendant charged with crime has not had a fair and impartial trial, the judgment will be reversed and a new trial granted."

Justice Budge, in a specially concurring opinion, states the rule thus:

"In order to sustain a conviction for larceny, the state must identify the property alleged to have been stolen and found in the possession of the accused . . . . where the evidence merely shows possession by defendant of the same number of cattle as was stolen (*Hilligas v. State,* 55 Neb. 586, 75 N. W. 1110; *Harris v. State,* 13 Tex. App. 309), or of hogs of the same color (*Smith v. State,* 44 Tex. Cr. 81, 68 S. W. 510), or of a horse of the same brand, as the prosecutor's, of which many have been sold (*Horn v. State,* 30 Tex. App. 541, 74 S. W. 1094), it has been held to be insufficient."

In the case at bar, all of the defendants were tried together and convicted of burglary in the first degree, notwithstanding the fact that a part of them had asked for a separate trial. The record wholly fails to connect some of these defendants with the possession of the goods alleged to have been stolen, or with any of the articles taken from this camp and offered as exhibits in the case, further than to show that all of the defendants, together with one Murphy, who has not been apprehended, were stopping at this camp, which seems to have been a common rendezvous for ''hoboes'' at the time of their arrest. The general rule that the possession of stolen property is evidence of guilt is limited by the rule that to warrant an inference of guilt it must be shown that the possession is personal, and that it involves a distinct and conscious possession by the accused. (*People v. Hurley,* 60 Cal. 74, 44 Am. Rep. 55; *State v. Drew,* 179 Mo. 315, 101 Am. St. 474, 78 S. W. 594; *Lehman v. State,* 18 Tex. App. 174, 51 Am. Rep. 298.)

It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen property on premises, or any other place, to which many others, have free access, without showing his actual, conscious possession thereof, discloses only *prima facie* constructive possession, and is not such possession as will justify an inference of guilt by reason thereof. The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the *corpus delicti.* (*Sanders v. State, supra;* notes, 101 Am. St. 481, at 487, and 68 L. R. A. 48.)

In *State v. Seymour,* 7 Ida. 257, 61 Pac. 1033, this court refused to allow a conviction for grand larceny to stand, although the defendant admitted the possession of the stolen property, and attempted to explain the same, and had fled

from the place of the commission of the crime after his arrest. The court said:

"In case of a substantial conflict of the evidence, the verdict of a jury will not be disturbed. But this is not a case where the evidence is conflicting. There is an absolute lack or want of legal evidence to sustain the verdict. In such a case the jury cannot arbitrarily ignore the evidence, when there is no conflict, and the witnesses are not impeached. If the jury could do that, it could find a defendant guilty without any evidence, and thus violate the well-established rule that a defendant cannot be convicted except upon legal evidence that establishes his guilt beyond a reasonable doubt."

Appellants assign as error the refusal of the court to grant the defendant's motion for an instructed verdict. C. S., sec. 8963, reads:

"If, at any time after the evidence on either side is closed, the court deems it insufficient to warrant a conviction, it must advise the jury to acquit the defendant. But the jury are not bound by the advice."

This provision is also California Penal Code, sec. 1118, and has been frequently construed by the courts of both states.

In *State v. Murphy,* 29 Ida. 42, 156 Pac. 908, this instruction was given:

"The court deeming the evidence insufficient to warrant a conviction, it must and does advise the jury to acquit the defendant. But the jury are not bound by the advice."

The state complained that this was error, and this court said:

"After the evidence on either side in a criminal cause is closed, if the trial judge deems it insufficient to warrant a conviction, it is his duty, under the provisions of the above-quoted section of the statute, to advise the jury to acquit the defendant. The jury are not bound by the advice; but if they are in accord with the views entertained by the trial judge that the evidence of the state is of such a nature that it is insufficient to satisfy their minds of the defendant's

guilt, or if all of the material elements of the crime charged have not been proved, it is their right to acquit the defendant."

It cannot be error to refuse to instruct the jury in the terms requested by appellants, because the court is not required by this statute to go further than to advise the jury; and the jury not being bound to follow such advice, reversible error cannot be predicated upon a refusal to give even an advisory instruction. But as stated in *State v. Murphy, supra,* if at any time after the evidence on either side is closed the court deems it insufficient to warrant a conviction, it should advise the jury to acquit the defendant. In *People v. Daniels,* 105 Cal. 262, 38 Pac. 720, it is said:

"We cannot say, therefore, that defendants were prejudiced by the refusal so to advise, since the jury might, notwithstanding the advice, have found the defendants guilty; and if so, the verdict could not be set aside upon the ground that the jury had disobeyed or disregarded the instruction of the court, but only upon motion for a new trial, upon the ground that the verdict was not sustained by the evidence. The obvious effect of this provision of the Penal Code is to take from the court the power to determine, as a matter of law, at the close of the evidence for the prosecution, that the evidence is insufficient to justify a conviction."

In *People v. Jones, supra,* the court, speaking through Sawyer, J., says that:

"Where there is an entire want of evidence of the *corpus delicti* except the statements made by the prisoner, the court should direct the jury to acquit the prisoner."

In the later case of *People v. Ward,* 145 Cal. 736, 79 Pac. 448, that court, speaking through Beatty, C. J., criticises *People v. Daniels, supra,* and holds that the refusal of a motion at the close of the people's evidence to instruct the jury to acquit is the subject of an exception. But notwithstanding these decisions, we conclude that a trial court does not commit reversible error in refusing to instruct a verdict of acquittal, but where a request is made for an advisory in-

struction to acquit, it should be given; and while for the reasons stated in *People v. Daniels, supra,* reversible error cannot be predicated upon a refusal to give an advisory instruction, if such instruction should have been given, the trial court, upon the rendition of a verdict of guilty, will set the same aside.

Counsel who prosecuted this case below and presented it to this court contends that upon a consideration of all the incriminating facts and circumstances, when taken in connection with the fact that the defendants were apparently "undesirable citizens" of the "genus hobo" type, and not engaged in any useful occupation in time of war and under circumstances which required every good citizen to be in the service of his country in some capacity, their several escapes, and the fact that certain goods had disappeared from this store, even though at a time and in a manner unknown to the owners, are such compelling circumstances as to warrant an inference that they must be guilty as charged, and therefore upon the whole record the conviction should be upheld by this court. It may well be that these facts and circumstances are sufficient to create the gravest suspicion as to the probable guilt of some one or even all of these defendants, but their conviction cannot be upheld unless there is found in the record competent legal evidence to sustain the verdict; for, as well stated by Sullivan, J., in *Reynolds v. State,* 58 Neb. 49, 78 N. W. 483:

"It has been suggested, and is doubtless true, that in this case 'outraged justice has laid her avenging lash on the back of one who honestly deserves the scourge,' but we cannot for that reason alone affirm the judgment. The jurisdiction of the courts, is not co-ordinate with that of the mob. The defendant, by his own confession, is an inveterate bigamist, but notwithstanding that fact he is, under the constitution and laws of this state, entitled to a fair and impartial trial. Notwithstanding his odious character, he must, like every other person accused of crime, be tried and convicted by due course of law or else go free."

Counsel for appellants have not urged many of the exceptions taken to the admission of incompetent evidence, and for this reason it is not necessary for us to make any extended reference to the same. But if a burglarious entry into this store had been fairly established by competent and satisfactory evidence on the part of the state, we would still be compelled to say, as was said in *State v. Blank, supra,* that it clearly appears from the record that the defendants did not have a fair and impartial trial. When the admission of this highly prejudicial evidence is considered in connection with the insufficient and unsatisfactory character of the evidence relied upon by the state to establish the *corpus delicti,* the vague and indefinite character of the evidence relating to the identity of the goods alleged to have been taken from this store, and the failure of the state to show with regard to some of the defendants that the possession of such goods was a distinct and conscious possession of the same, we feel compelled to hold the evidence insufficient to sustain the verdict and judgment of conviction.

The cause is reversed and remanded, with instructions to grant a new trial.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.