# ERNEST LYNN v. STATE.

No. A-9156.   Oct. 22, 1937.
(72 P. 2d 846.)

Cornelius Hardy, Stanley Cunningham, John S. Batson, Ratliff & Clark, Mathers & Mathers, and Newman & Phillips, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and W. D. French, Co. Atty., for the State.

BAREFOOT, J.   The defendant was charged by information, in Johnston county, with the crime of grand

larceny; was tried, convicted, and sentenced to serve a term of two years in the penitentiary, and has appealed.

It becomes necessary to review but one of the errors presented by the defendant; that the evidence was insufficient, and that the court erred in denying defendant's motion for an instructed verdict of not guilty.

The defendant, A. J. Jarman, and R. M. Jarman, were jointly charged with the larceny of a mower, the property of J. C. Deboard, of the value of $90, on the 25th day of July, 1935. A severance was granted, and the defendant, Ernest Lynn, was tried alone.

The prosecuting witness, J. C. Deboard, owned a farm in Johnston county, Okla. The defendant was a resident of Marshall county, living at a distance of 20 miles from where Mr. Deboard lived. On the evening of the 24th of July, 1935, the mower in question was left by those employed by Mr. Deboard in a meadow adjoining his place; on the morning of the 25th of July, the mower was gone and an examination revealed that an automobile, with a 2-wheeled trailer, had driven to the place where the mower was left and that the mower had been loaded on the trailer and carried away. About 10 days thereafter, the sheriff of Johnston county and the sheriff of Marshall county found the mower in a secluded spot of tall Johnson grass and sunflowers near the home of defendant in Marshall county.

The codefendants, A. J. Jarman, and his son, R. M. Jarman, who were indicted jointly with the defendant, resided about one mile south of defendant's residence, and in close proximity to where the mower was found. There is no conflict in the testimony that a car belonging to the defendant, and his trailer, were used to convey the mower from Johnston county to Marshall county, and

that the codefendants, A. J. Jarman and R. M. Jarman, were the parties who drove the car and took the mower from Johnston county and left it in the high grass and weeds near the home of defendant, and on land that he had rented to another party on the shares for the year of 1935. The sheriff of Johnston county, and one of his deputies, upon receiving information as to the identity of the car used in taking the property, went to Marshall county for the purpose of trying to locate the stolen property. They first visited the sheriff of Marshall county, and, in company with him and his deputy, went to the home of defendant. They first found there the trailer that had been used to convey the mower, and, after conducting a search, the mower was found in the field near defendant's home, but was not in sight of and could not be seen from his house, by reason of the high weeds and Johnson grass. The officers talked to the defendant, who was at home when they arrived. He immediately denied any knowledge of the mower or its whereabouts. He offered to assist them in trying to locate it; told them he had loaned his car and trailer to his codefendants, A. J. Jarman and R. M. Jarman, on the evening of the 25th of July, who stated to him that they were going to Johnston county to get some kegs. The defendant, upon being shown evidence or marks on the trailer that indicated that a mower or other machinery had recently been loaded thereon, remarked, "Damned if it don't look like it," and he immediately told the officers he would go see Mr. Jarman and try to get him to tell him where the mower was if he had taken it, and that if he could not get him to tell he would get Mrs. Jarman to find out and tell him, and that he would deliver it to them. Before the defendant had an opportunity to talk to Jarman, who had been placed in jail, the search was conducted; the defendant going

with the officers at the time the search was made, and the mower was found by one of the officers at the place above indicated. The state contends that the defendant made certain contradictory statements in his conversation with the officers before the mower was found, but a careful reading of all the testimony reveals that his testimony was just about as above stated. The testimony of the state shows that a car came by a neighbor's house about 4 a. m., on the morning of the 26th of July, which was recognized as defendant's car, this being the morning after the mower was stolen, and that this same car, a little later, came back and stopped at the home of Mr. Jarman. The evidence of the defendant was that the car was returned by Mr. Jarman about 7 a. m., on the morning of the 26th, and that he did not get the trailer for several days thereafter, as the same had been left at another place for the purpose of being repaired.

There was a conflict in the evidence as to how the car had proceeded in going to the place where the mower had been left, the evidence of the state attempting to prove that it went directly by the house of defendant, while that of the defendant showed that it had crossed a fence south and come into the field some distance from the defendant's home. The evidence of both the state and defendant showed that the mower was in a place where it could not be seen from the house of defendant. It was finally found by the officers only after a careful and painstaking search. The defendant, when first approached by the officers, denied all knowledge of knowing where it was. There is not a line of testimony to show that he had any personal possession of the same, or that he at any time exercised any control or supervision over it. It had been stolen ten days prior to the time it was found; yet there is no evidence of the use of the mower in any way by the

defendant. He told the officers at the very first opportunity when he was approached of the lending of the car to his codefendants, A. J. Jarman and his boy, R. M. Jarman, on the afternoon that the mower was stolen, and offered to assist them in any way that he could in locating the property. The evidence showed that defendant often loaned his car to others.

We do not think the finding of the mower near defendant's home, in a place where it was concealed by tall weeds and grass, where it could not be seen from his home, in the absence of any testimony that he knew it was there, or had exercised any supervision or dominion over it, would be sufficient to justify the jury in the inference that it was in his possession, as it must have done in finding the defendant guilty. His declaration that he knew nothing about the mower, if true, was all that was necessary upon his part. If he did not know it was there, he could not be expected to explain how it came there. His explanation of lending his car to his codefendants, A. J. Jarman and R. M. Jarman, is in no way disputed. There is no testimony to show any conspiracy between the defendant and the Jarmans to steal the mower, and, as a whole, the testimony fails to connect the defendant with the larceny of the mower.

Wharton on Criminal Evidence, p. 660, § 758, says, in reference to the possession of stolen property, that before larceny may be inferred four points must be considered: (a) The possession must be personal; (b) must be recent; (c) must be unexplained; and (d) must involve a distinct and conscious assertion of property by the defendant. The facts in the instant case fail in three of the above instances. There is no proof to show the personal possession of the property, nor a distinct and conscious assertion of dominion over the property, and

at the very first opportunity, the defendant, if he did not know of the whereabouts of the property, explained all he knew about it. When this was done the law demanded of the state proof of his connection with the actual larceny of the property, and this the state failed to do.

The rule of law announced by this court in many decisions is that the possession of property recently stolen, unexplained, is a circumstance to be considered and given such weight as the jury may see fit. Cox v. Territory, 2 Okla. Cr. 668, 677, 104 Pac. 378; Blumhoff v. State, 29 Okla. Cr. 4, 231 Pac. 900; Chrisman v. State, 22 Okla. Cr. 52, 209 Pac. 656. This is the general rule where the question of possession is undisputed; but where the question of possession is denied, the general rule is stated in Underhill on Criminal Evidence, p. 361, where it is said:

"Not only must the possession be recent, but it must be personal, exclusive, and with a distinct, implied or express assertion of ownership. If these essentials are not proved, a conviction based on the fact of possession must be set aside. A mere constructive possession is not enough. The accused will not be presumed to have stolen articles which he does not know he possesses. If other persons have equal right and facility of access with him to a room, trunk or closet where stolen goods are discovered, possession, not being exclusive or personal, is of no value as evidence."

In the case of People v. Hurley, 60 Cal. 74, 44 Am. Rep. 55, the court says:

"The assertion that the recent possession of stolen goods in a case of larceny raises a presumption that they were stolen by the possessor, is not strictly accurate. The cases in which that has been said are those in which it also appeared that the possessor acquired the possession by his own act, or with his own concurrence or knowledge. If it had been shown in this case that the defendant placed these hides in his barn, or caused them to be placed there,

or knew that they were there, or exercised any acts of possession over them, the case would be essentially different from what it now is. His explanation 'that he knew nothing about the hides being in his barn was the only one which he could give unless he did know something about their being there; and the only way to prove his explanation false was to prove that he did know something about it. But there is no evidence which tends to prove that he did. If true, his explanation was as satisfactory as any ever given of the possession of stolen property; and it was incumbent on the prosecution to prove it untrue before asking a conviction."

And the court further says:

"Burrill states the law as follows: 'The possession must be exclusive. A finding of stolen property in the prisoner's house or apartment, is equally competent in evidence against him, as a finding upon his person. But the house or room must be proved to be in his exclusive occupation. If the property were in a locked-up room or box, of which he kept the key, it would be a fair ground for calling upon him for his defense. But if it were only found lying in a house or room in which he lived jointly with others equally capable of having committed the theft, it is clear that no definite presumption of guilt could be made.' We do not think that the bare fact of finding the hides of cattle that had been stolen in the defendant's barn, which is shown to have been open to anyone who chose to enter it, in the absence of any evidence tending to prove that he knew or had any reason to suppose that such hides were there, sufficient to justify the inference which the jury must have drawn from it, in order to find the defendant guilty."

In 36 C. J. p. 871, § 429, the true rule is well cited:

"To render possession personal and exclusive it is not necessary that the property should have been actually in the hands or on the person of accused, or that it should have been in his house or on his premises. It is possible for him to have had personal and exclusive possession, although the property was secreted on another man's

premises or on premises which he and others occupied jointly, or even in a public place, if the property, wherever situated, was under his exclusive personal control. The exclusiveness of this control is the test of possession; for although the property may have been found in premises of which accused had the exclusive occupancy, yet if other persons had access to the premises and equal opportunity to have concealed the property therein, there was no such exclusive possession in accused as to give rise to the presumption of his guilt. For stronger reasons is this case when the premises were occupied by other persons beside accused."

In the case of State v. White, 37 N. M. 121, 19 P. 2d 192, 194, the court says:

"There is no evidence that Oscar White had anything but constructive possession of the beef. Possession of the fruits of crime to raise a presumption of guilt of the possessor involves knowledge, dominion, and control, with power of disposal, or voice in the power of disposal, in the alleged possessor. The fact that the beef was found in a shed on a large ranch belonging to the defendant, which shed and ranch was open to the use of others, does not raise such a presumption of law as to the defendant's guilt, which would justify the conviction of the accused.

"It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property, when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen property on premises, or any other place, to which many others have free access, without showing his actual, conscious possession thereof, discloses only prima facie contructive possession, and is not such possession as will justify an inference of guilt by reason thereof. The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the corpus delicti. San-

ders v. State, 167 Ala. 85, 52 So. 417, 28 L.R.A. (N.S.) 536; notes in 101 Am. St. Rep. 481, 487, and 68 L. R. A. 48."

In State v. Drew, 179 Mo. 315, 78 S. W. 594, 596, 101 Am. St. Rep. 474, the court says:

"In our opinion the mere fact of finding stolen articles on the premises of a man of a family, without showing his actual conscious possession thereof, discloses only a prima facie constructive possession, and is not such a possession as will justify a presumption of guilt by reason thereof. It is within the common experience that many honest and worthy men have dishonest children and servants, and to indulge in the presumption that because goods are found on their premises which turn out to have been stolen, without going further and showing an actual conscious and exclusive possession of such goods in the head of the family, would result often-times in punishing the innocent for the guilty. There is no occasion for pushing the presumption to any such length. Kept within its proper limitations it is a salutary principle and reasonable, but given a latitudinous constructive interpretation it is unreasonable, and would work grave injustice."

In the case of State v. Sullivan, 34 Idaho, 68, 199 P. 647, 650, 17 A. L. R. 902, the court says:

"The general rule that the possession of stolen property is evidence of guilt is limited by the rule that to warrant an inference of guilt it must be shown that the possession is personal, and that it involves a distinct and conscious possession by the accused. People v. Hurley, 60 Cal. 74, 44 Am. Rep. 55; State v. Drew, 179 Mo. 315, 78 S. W. 594, 101 Am. Rep. 474; Lehman v. State, 18 Tex. App. 174, 51 Am. Rep. 298.

"It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen property on premises, or any other place, to which many others have free access, without showing his actual,

conscious possession thereof, discloses only prima facie constructive possession, and is not such possession as will justify an inference of guilt by reason thereof. The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the corpus delicti. Sanders v. State, supra; notes 101 Am. St. Rep. 481, and 68 L. R. A. 48." Lehman v. State, 18 Tex. App. 174, 51 Am. Rep. 298; Lemon v. State, 89 Tex. Cr. R. 361, 231 S. W. 388.

For the reasons above stated, we are of the opinion that the evidence was insufficient to convict the defendant of larceny of the mower as alleged in the information in this case, and the court should have sustained the motion of the defendant for an instructed verdict of not guilty.

The judgment of the district court of Johnston county is therefore reversed, and, unless the county attorney has additional evidence which in his opinion would justify a new trial, the defendant is ordered discharged.

DAVENPORT, P. J., and DOYLE, J., concur.