## Kenney v. Commonwealth.

(Decided May 4, 1923.)

## Appeal from Harrison Circuit Court.

1. Larceny—Possession of Stolen Property Must be Personal to Warrant Inference of Guilt.—Possession of recently stolen property, from which guilt of theft may be inferred, must be personal, and such as is involved in a distinct and conscious assertion of possession by the accused.

2. Larceny—Presence of Stolen Tobacco in Defendant's Unlocked Barn is not Sufficient to Warrant Inference of Guilt.—The mere fact that recently stolen tobacco was found in defendant's unlocked barn, to which not only the members of his own family, but more distant relatives and mere acquaintances, had free access, was not sufficient to justify an inference of his guilt of the theft of the tobacco, nor even to require him to explain its presence there.

3. Larceny—Character of Possession of Stolen Property is Primarily Jury Question.—The questions of the character of defendant's possession of stolen property and the inferences to be drawn therefrom under all the attendant circumstances, including his explanation, are questions of fact primarily for the jury, and become questions of law for the court only when reasonable men of necessity must have been in doubt as to defendant's possession having been proved to be personal.

4. Larceny—Attending Circumstances Held to Warrant Inference of Guilt from Presence of Stolen Tobacco in Defendant's Barn.—In a prosecution for larceny of tobacco, which was found in defendant's unlocked barn the morning after it was stolen, evidence of defendant's conduct and declarations with reference thereto held sufficient to warrant the jury in finding that the tobacco was in defendant's personal possession, so as to warrant an inference of guilt therefrom.

H. L. PETERSON and SWINFORD & SWINFORD for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant was convicted and sentenced to one year in the penitentiary under an indictment charging him with grand larceny. The only ground urged for reversal is that the verdict is not sustained by the evidence.

At about daylight, February 2d, 1923, Joe Marsh and Harry Marsh discovered that the night before someone had taken some of their tobacco from the barn where it

was stored on the stick. They also discovered pieces of tobacco scattered on the ground from the barn to the pike, where there were evidences that a horse and buggy recently had been hitched. The tracks of the horse showed that one-half of one of his shoes was gone, and the tracks of the buggy that it had three good rubber tires and one that was badly worn.

Joe Marsh followed these tracks from that place along the pike for five or six miles and until they turned into the barn of the defendant. As he approached the barn, the defendant came out of his house, and they spoke. Marsh told him his business, and that he had tracked the horse and buggy to his barn. Defendant said he did not know anything about it, but if any tobacco belonging to Marsh was in his barn, he was welcome to it. They then looked in the crib and a garage, and defendant said that he had to go for some sheep, but that Marsh was welcome to search the barn. After defendant had gone, Marsh went into the barn and found a horse with one-half of a shoe gone, and a buggy with three good rubber tires and one worn one, corresponding to the tracks he had followed. He also found tobacco leaves in the buggy, but he did not find his tobacco.

He then went to town, got a search warrant, and with the sheriff, a deputy sheriff and his brother, Harry Marsh, went back to the barn. In the barn loft they found his tobacco under about two feet of loose hay. The tobacco had been placed upon the sticks in such a way that it was easily and positively identified, and there is no contention that a part of the tobacco found in defendant's barn was not the tobacco stolen from the barn of the Marsh brothers.

Joe Marsh testified that when he told defendant at the barn that some of his tobacco had been stolen, the defendant told him he did not know anything about it, that he did not get in until late the night before. Defendant denied making the statement that he did not get in until late the night before, and testified:

That he arrived at his home late that afternoon, and that he was not away from the house during the night; that he was at home and in his living room with his daughter, his two sons, A. C. Robbins and Raymond Cook from dark until after twelve o'clock, at which time Cook left; that Robbins was a cousin of his wife, lived in Wisconsin, and was a visitor in his home; that shortly after Cook left, and at about one o'clock, he, Robbins and his

children went to bed, and that he was not up or out of the house until about daylight, and but a little while before Marsh arrived; that he slept in the back upstairs room, Robbins in the room next in front of his, and the two boys in the front upstairs room; that his daughter slept in the living room downstairs, and that for him to get out of the room in which he slept, he had to go through the rooms occupied by Robbins and his two boys.

In all of this the defendant is corroborated by Cook, Robbins, his daughters, and one of his sons. Robbins and the son who testified both stated that they did not hear defendant pass through their rooms after he had retired, and that if he did so, it was without their knowledge. Robbins in addition testified that his health was poor and that he had not slept soundly, and that he believed he would have heard the defendant had he passed through his room.

All of these parties testifying for the defendant, as well as the defendant, stated, and no one denied, that the horse and buggy found in the barn did not belong to the defendant, but belonged to his son-in-law, Strother Feeback, who resided about two miles from the defendant's home, and that the horse and buggy were driven to the defendant's barn the afternoon before, and shortly before dark, by Robbins and defendant's daughter in returning from the home of Feeback, where they had spent the day.

Defendant admits that he had made no effort to find out who put the stolen tobacco in his barn. In addition to the evidence of the two Marshes, the Commonwealth proved by Clarence Brunker that the defendant told him on the afternoon of February 2d, that he had a little tobacco bulked up in the loft; and by the sheriff that he did not see any other tobacco that day except that which belonged to the Marshes.

A. C. Brunker, testifying for the Commonwealth, stated that he heard the defendant that same afternoon tell a Mr. Florence that he would find his tobacco in Joe Marsh's barn.

Joe Marsh testified that after they took the tobacco from defendant's barn, he discovered that sixteen sticks of the tobacco did not belong to him, but belonged to Mr. Florence.

Defendant does not deny making these last statements, and stated upon cross-examination that he had a little jag of tobacco of his own in the barn covered with

hay, and that the reason he covered it up was to prevent the chickens from getting on it and scratching it.

It is earnestly insisted by his counsel that this evidence merely shows a constructive possession of the stolen tobacco by the defendant, and not such a personal possession as will support a presumption of guilt.

In support of this contention, we are referred to Roberson's Criminal Law & Practice, 610; Underhill on Crim. Law, 527; 25 Cyc. 139; People v. Hurley, 60 Cal. 74; 44 Am. R. 55; Lehman v. State, 18 Tex. App. 174, 51 Am. R. 298.

These authorities, as well as reason, fully support the rule that the possession from which guilt of theft may be inferred must be personal and such as is involved in a distinct and conscious assertion of possession by the accused, since manifestly, as said in 17 R. C. L. 73, ''It would be pushing the rule too far to require one accused of a crime to give an explanation of his possession of the stolen property, when such possession could also with equal right be attributed to another.''

Hence the mere fact that the recently stolen tobacco was found in defendant's unlocked barn and to which not only the members of his own family but more distant relatives and mere acquaintances, had free access, was not of itself sufficient to justify an inference of his guilt, nor even to make it obligatory upon him, as matter of law, to offer an explanation of its presence there, since. if without guilt, because of that very fact he could not explain how or by whom it came there.

But the question of the character of a defendant's possession of stolen property, and the inferences to be drawn therefrom under all of the attendant circumstances, including such explanations as he can or does offer, are questions of fact primarily for the jury, and become questions of law for the court only when reasonable men of necessity must have been in doubt as to defendant's possession having been proven to be personal. Upon such an inquiry, the attendant circumstances are necessarily of controlling weight; and such, in this case, as in our judgment to prevent a court from interfering with the jury's decision.

The fact that the tobacco was carried direct to defendant's barn and there concealed under his hay, with a small ''jag'' of his own tobacco which he admits was similarly stored in the loft; that he did not show Marsh his own tobacco or tell him about it, or take him into

the loft, but after looking with him in the garage and crib said he had to go for some sheep and left; that he admitted having made no effort to ascertain who hid the tobacco with his own in his barn; that a part of the tobacco thus found in his barn and by mistake taken to Marsh's barn, belonged to a Mr. Florence, which defendant that afternoon said he would find at Marsh's barn; and the fact that Marsh testified defendant told him that morning he did not get in until late the night before, are some of the more important circumstances that in our opinion rendered the character of the possession a question peculiarly for the jury, and warranted the inference of guilt which they deduced therefrom under instructions that are not criticised.

Judgment affirmed.