STATE v. KINSEY et al.

No. 5092. Decided January 23, 1931. (295 P. 247.)

*L. A. Wade,* of Ogden, for appellants.

*Geo. P. Parker,* Attorney General, and *L. A. Miner,* Deputy Attorney General, for the State.

STRAUP, J.

The defendants were convicted of the crime of burglary, entering a garage in Ogden City with the intent to commit larceny, and appeal. The state claimed that the defendants entered the garage on the night of June 15, 1930, and took therefrom an oxygen tank, a hose-cutting gauge, and a pair of acetylene welding goggles. The state gave evidence to show that some one at the time stated entered the garage by prying loose and removing a window, and took the articles from the garage. The defendants contend that the

evidence was not sufficient to connect them with the commission of the offense.

A witness for the state testified that between 1:15 and 1:30 a. m. on the morning of June 16th as he and the manager of a theater in Ogden City (many blocks from the garage and in a different part of the town) were coming out of the theater after it had closed, he saw a Dodge automobile with disc wheels and a California license parked in front of the theater; that he saw a man standing in the outside lobby of the theater who seemed to observe the door and to examine the lock, whom the witness identified as one of the defendants, and saw another man in the car and another in the rear of the car approaching the manager's car "and fumbling with the gasoline tank," whom he was unable to identify, nor did he state that the other defendant was one of them; that the three men got in the Dodge car and drove away; that later he and the manager returned to the theater, and, on entering it, found a man hidden behind the pipe organ with his shoes off and in his hands, and a revolver in his coat pocket, and that he was arrested and taken to the police station. It was not claimed that he was either of the defendants or shown to have been in any way connected or associated with either, or was an acquaintance of either, or that the defendants had ever met or had seen him or had any knowledge that he was in or about the theater.

The state gave evidence that the garage was entered between 10 and 11 o'clock—not later than 11 o'clock—on the night of June 15th. The police at Ogden were not notified and had no knowledge of the commission of the burglary until about 8 o'clock the next morning. However, a police officer testified that about 2 o'clock on the morning of June 16th he saw the defendants driving in an automobile on a principal street of Ogden, and that a blanket was spread over the rear seat of the automobile as though covering some object, but the witness did not know what it was; that later, about two hours thereafter, at about 4:20 in the

morning, in making his rounds, he found a Dodge car parked in a vacant lot where a number of other cars were parked in the rear of the Venice Hotel or rooming house and in the vicinity of a number of other cheap hotels and rooming houses; that he notified the police station, and that he and another officer, about twenty or thirty minutes thereafter, arrested the defendants, who were asleep in a room in the Venice Hotel or rooming house where they were registered; the car was searched, and in it was found a loaded revolver, and later, and after the car had been taken to the police station, three pairs of goggles were found in two pockets of the car, one pair of snow glasses or goggles and two pairs of welding goggles, one of which was identified by the owner of the garage as a pair of acetylene welding goggles belonging to him and taken from the garage on the night of June 15th. The tank was not in the automobile. It was shown to be too long to lay it on the back seat. It was found about 10 o'clock on the morning of the 16th along the side of the state highway near a canning factory and a considerable distance from Ogden City.

The foregoing, in substance, is the evidence of the state. No evidence was given to show that the defendants or either of them at any time were seen at or in the vicinity of the garage, or that they even had been in Ogden at any time, until the morning of June 16th between 1:15 and 1:30 o'clock, when, as testified to, one of them was seen in front of the theater.

At the close of the state's case, the defendants moved to be discharged for want of sufficient evidence to connect them with the commission of the offense. The motion was overruled. They thereupon gave their testimony. They denied all knowledge of the offense and that they had anything to do with the commission of it. There is not anything in the testimony of either of the defendants which in any particular helps the state to establish its cause. It is unnecessary to refer to their testimony in detail. Both were

residents of Los Angeles, Cal. Both were married and had children, their wives and children residing in Los Angeles. One of them and his wife formerly resided in Utah and had relatives in Ogden City. One of them at Los Angeles was an automobile mechanic. The other was an ornamental iron worker. Business and employment not being good in Los Angeles, they in an automobile owned by one of the defendants drove from Los Angeles to Ogden to there seek employment or elsewhere in Utah. They arrived in Ogden, as they testified, about midnight on June 15th. They drove along a street or two in Ogden, and then to the Venice Hotel or rooming house where they registered, engaged a room, parked their car in the rear where the landlady of the hotel or rooming house told them to park it, then had lunch and went to bed, where they were arrested the next morning. They admitted ownership of the gun and of two pairs of goggles found in the automobile, but disclaimed ownership of the goggle found in one of the pockets of their car and which was identified by the owner of the garage as his goggle, and disclaimed all knowledge of it being in the car or how it came to be there or who put it in the car, and expressed surprise when at the preliminary hearing it was testified to that the goggle identified by the owner was found in the car. They denied they were at or in front of the theater or that they had parked their car there. The witness, a young boy, an usher at the theater, and who testified that between 1:15 and 1:30 o'clock on the morning of June 16th he saw one of the defendants in front of the theater and with two other persons drove away, testified that he was positive that the Dodge car he saw parked there had disc wheels. He testified that he could not be mistaken that the car he saw had disc wheels. The automobile of the defendants indisputably had wooden and not disc wheels. On an intermission of court, the witness was taken to the police station, where he saw the defendants' car, and then returned in court and testified that he had just seen the car, and that it had wooden wheels and not disc wheels, and

hence was mistaken with respect to his testimony in such particular, but otherwise adhered to his testimony that he saw one of the defendants in front of the theater and that he with two others drove away in the Dodge car. It is also apparent that, when the defendants were arrested, they were not arrested for the charged offense, but on suspicion of something else not disclosed by the record, and when thereafter the burglary was made known, the arrest was treated as a "lucky find" and the defendants charged with the burglary.

At the conclusion of all the evidence, the defendants asked for a directed verdict of not guilty on the ground that the evidence was insufficient to connect the defendants with the commission of the offense. That motion also was refused. The jury convicted the defendants as charged in the information. We are of the opinion that both motions ought to have been granted. The state argues that the mere or bare possession of the goggle recently stolen was sufficient to justify the verdict, and that the jury was not required to believe the testimony of the defendants that they had no knowledge of the goggle being in the car. Possession of articles recently stolen, when coupled with circumstances of hiding or concealing them, or of disposing or attempting to dispose of them, or of making false or unreasonable or unsatisfactory explanations of the possession, may be sufficient to connect the possessor with the commission of the offense. But mere or bare possession when not coupled with other culpatory or incriminating circumstances, does not alone suffice to justify a conviction. *People* v. *Hart,* 10 Utah 204, 37 P. 330; *State* v. *Potello,* 40 Utah 56, 119 P. 1023; *State* v. *Converse,* 40 Utah 72, 119 P. 1030; *State* v. *Bowen,* 45 Utah 130, 143 P. 134; *State* v. *Barretta,* 47 Utah 479, 155 P. 343, 346.

In the last-cited case, and after referring to the prior cases, this court said:

"If only the larceny is shown and recent possession in the accused, that is not sufficient to justify a submission of the case, and does not warrant a conviction."

Further, the authorities also are to the effect that the possession must not only be personal, exclusive, and unexplained, but must also be conscious, or a conscious assertion of possession by the accused. Ex parte La Page (D. C.) 216 F. 256; *People* v. *Warren*, 130 Cal. 683, 63 P. 86; *People* v. *Hurley*, 60 Cal. 74, 44 Am. Rep. 55; *State* v. *Williams*, 102 Or. 305, 202 P. 428; *Kenney* v. *Commonwealth*, 199 Ky. 79, 250 S. W. 494; *State* v. *Fogle*, 211 Mo. App. 18, 244 S. W. 105; *State* v. *Drew*, 179 Mo. 315, 78 S. W. 594, 101 Am. St. Rep. 474; *People* v. *Friedman*, 149 App. Div. 873, 134 N. Y. S. 153; *Moreno* v. *State*, 24 Tex. App. 401, 6 S. W. 299; *State* v. *Smith*, 24 N. C. 402; *Presley* v. *State*, 63 Fla. 37, 57 So. 605; *State* v. *De Yoe*, 97 Iowa, 744, 66 N. W. 733; 17 R. C. L. 73. No conscious possession or of any conscious assertion of possession was shown.

The judgment of the court is therefore reversed and the case remanded for a new trial.

CHERRY, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.