# Cole v. Commonwealth.

(Decided Nov. 25, 1932.)

JOE LANCASTER for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

Appellant was indicted for the offense of knowingly receiving stolen property of the value greater than $20, and sentenced to serve one year in the penitentiary. He appeals.

As grounds for reversal, he first contends that his demurrer to the indictment should have been sustained because it fails to allege in the accusative part that he "knowingly" received the property alleged to have been stolen. Appellant is in error as to this, for the accusative part specifically states that he unlawfully and feloniously received stolen property of value, the receiving whereof is punishable as a felony "knowing the same to have been stolen."

It is next contended that the appellant was entitled

to a peremptory instruction on the ground that there was no evidence establishing his guilt, and, if in error as to this, that the verdict is at least flagrantly against the evidence. These contentions require a short statement of the evidence as adduced by the commonwealth and appellant.

For the commonwealth, it was shown that in October, 1931, the place of business of J. A. Parks in Mayfield, Ky., was entered in the nighttime, and a number of tires, both for trucks and passenger cars, was taken therefrom. Mr. Parks, for some reason not disclosed in this record, became suspicious as to where the tires had been taken after they were stolen, and so he procured a search warrant to search the premises of the appellant who lived near Murray, Ky. Appellant was engaged in the trucking business, and had two or three trucks and perhaps a passenger car which he used in the conduct of his business. Some time during the night of October 24th, Parks and the officers from Mayfield showed up at the home of the appellant. They aroused him from his slumbers, and he dressed and came down. They claimed that on being told that they were hunting for tires he gave them permission to search the premises for them; no reference being made to the search warrant. He claims that they told him they had a search warrant, for which reason he gave them permission to search the premises. However, no question is made on this appeal as to the right of the search. Appellant first took Parks and his party through his garage and outbuildings. Nothing was found. They then came to the house, and the appellant told them that, although they could search the house, they would find nothing there, as he had no tires in the house. They found nothing downstairs, but at the top of the stairs leading to the second floor, they found a new tire still wrapped in the wrapping paper that came around it from the factory. Mr. Parks identified this tire from its serial number as one of the tires which had been taken from his store. Appellant at first claimed that he did not know how it got there, but later he claimed that the tire was his, being a spare which he had bought from Bill McClain, and which he had for one of his trucks, and which he thought when the party entered his house was in the bed of the truck. He accounted for its presence in the house by saying that one of his employees must have brought it in during the night for

safe-keeping. About the time this tire was discovered at the head of the stairs, one of the searching party noticed a place in the wall that appeared to have been sawed through, an on examining it further and closer found that it opened into a recess in the wall where were found eight or nine tires, most of them truck tires, and most of which Parks positively identified as having been stolen from his place of business. The tires so found and identified as belonging to Parks were worth far in excess of $20. The commonwealth also produced two men named Bradley and King who testified that they were with one Bill McClain on the night these tires were taken from Parks; that in company with McClain they went to Parks' store, which McClain entered by means of a key which he had and which unlocked the lock on the front door; that the tires were taken from the store and put into a machine and all three got into it and started out towards Murray; that on their way to Murray they passed the appellant, who was driving a truck; that they stopped, as did also appellant; that McClain got out and went back and had some conversation with appellant, the purport of which neither witness knew; that after this conversation McClain came back to the machine in which he had been riding and the three went on to where the appellant lived and there left the tires.

For his defense, appellant denied knowing anything about the tires which were found in the recess in the wall, although he admitted the episode of the meeting with McClain and the other two men on the road, but claimed that McClain conferred with him about other matters. He stated that McClain, who was also in the tire business in Mayfield, was accustomed to leaving tires from time to time at his residence, for the purpose of having appellant deliver them to McClain's customers, and for that reason appellant's family often let McClain bring tires to the house and leave them, and that it was no doubt in this fashion that the tires which Parks found in the wall and which he claimed to own had been left. Appellant insisted, however, that he knew nothing about the tires being there until they were discovered by Parks and the searching party. So

far as the tire on the steps was concerned, appellant claimed to have bought it from McClain as a spare tire for his truck, and that he thought on the night of the search it was in the truck and did not know it had been brought in the house, and that it was because of this that he had told the party that there were no tires in the house. He also introduced McClain, who in a very guarded fashion testified that in his "business transactions, dealing in tires," he never "delivered to or put in possession of this defendant, Leander Cole, any stolen property." A number of character witnesses testified to the good reputation of appellant. Aside from the presumption of guilt which section 1199 of the Statutes creates because of the possession of stolen property, it is manifest that, under the evidence as we have detailed it, the question whether appellant received these tires knowing them to have been stolen was one for the jury, and that the verdict that he did is not flagrantly against the evidence.

Appellant also insists that he was entitled under section 241 of the Criminal Code of Practice to an instruction to the effect that he could not be convicted on the testimony of Bradley and King without evidence to corroborate them; they being, as appellant argues, accomplices. But it is well settled that except under certain special circumstances present in the case of Grady v. Commonwealth, 237 Ky. 156, 35 S. W. (2d) 12, but not so here, the thief and the receiver of the stolen property are not accomplices. Solomon v. Commonwealth, 208 Ky. 184, 270 S. W. 780.

It is lastly contended that the court erred in the instruction which it did give in telling the jury that, if it found the appellant guilty of knowingly receiving stolen property, it should punish him as for a felony if the value of the property involved was over $20, but only as for a misdemeanor if the value was under $20; it being argued that the giving of the misdemeanor part of the instruction was highly prejudicial. Aside from the fact that appellant was not found guilty under that part of the instruction, we are totally unable to follow appellant's argument that it was prejudicial.

No error appearing, the judgment is affirmed.