## STATE v. DYETT et al.

No. 7173.   Decided November 9, 1948.   (199 P. 2d 155.)

See 52 C. J. S., Larceny, sec. 105; 32 Am. Jur. 1039. What amounts to asportation which will support charge of larceny, note, 114 A. L. R. 1383.

*John R. Hart,* of Salt Lake City, and *David H. Bybee,* of Woods Cross, for appellants.

*Grover A. Giles,* Atty. Gen., *C. N. Ottosen,* Deputy Atty. Gen., and *Brigham E. Roberts,* District Attorney, of Salt Lake City, for respondent.

LATIMER, Justice.

The defendants were convicted of the crime of grand larceny for the theft of a 1947 Dodge automobile and appeal.

Under a prior arrangement, a consignment of four new automobiles was sent to the North Temple Garage, (hereinafter referred to as the Garage) of Salt Lake City on Saturday, October 25, 1947, to be stored for the Lyman Motor Company, also of Salt Lake City. On the same day, Louis S. Goodsell, an employee of Lyman Motor Company was sent to check the arrival of the automobiles, and together with Dave Park, an attendant of the Garage, he noted the arrival of the automobile in question, a maroon Dodge coupe. Thereafter he parked it in the basement of the Garage, locked it, delivered its keys to Mr. Park and left after receiving a claim check on the automobile. Mr.

Park then tagged the keys with the remaining portion of the claim check and placed them in a desk in the office of the Garage located at the rear of the upper floor. There were only two keys to this office and they were individually owned by Orlan R. Williams and Kenneth E. Capps, co-owners of the Garage, and except when in use, they kept the office locked. Mr. Williams and Mr. Capps locked the office at about 5 o'clock in the afternoon on Saturday, October 25, 1947 and it was not unlocked by either of them until Monday, October 27, 1947. Both co-owners testified that upon their arrival Monday morning, they observed no indication of a breaking and entering into the office apart from the fact that they later found the keys were gone.

Stephen J. Terry, sales manager of Lyman Motor Company, visited the Garage at about 9 o'clock Sunday morning, October 26, 1947 to check the newly arrived shipment and he testified that the Dodge coupe was at that time parked in the basement of the garage. At about 3:30 in the afternoon of the same day, Officer Ferguson and Officer Adams, of the Salt Lake City Police Department, while on duty, and while driving past the used car lot of the Brown Motor Company, observed defendant Dyett stooping over the front bumper of a 1937 Ford automobile being displayed on the lot. They also observed defendant Lloyd arising from a crouched position at the rear of the same automobile. After proceeding approximately one hundred feet farther, they turned around and as they approached the lot to investigate, they observed defendant Dyett tampering with the front license plate on the 1937 Ford automobile. The officers testified that Dyett appeared to be turning the wing nuts used to secure the plate to the frame. When accosted by the officers and asked what he was doing defendant Dyett answered that he was inspecting the license plate. The officers testified, however, that this license plate had been loosened. Officer Adams proceeded to the rear of the lot and there discovered defendant Lloyd, who had left the rear of the Ford automobile, arising from in front of the 1947

Dodge coupe. The officer further discovered a license plate that had been removed from the rear of the 1937 Ford automobile lying on the ground some six inches in front of the bumper of the Dodge coupe. In discussing his presence on the lot defendant Lloyd told the officers he worked for Brown, owner of the lot. This statement was later proved to be false.

The State's witnesses did not recognize or know either of the defendants with the exception of Ray W. Brown, owner of the lot, who testified he had sold defendant Lloyd an automobile about three and one-half years prior to the trial. The record is silent as to how the Dodge coupe got from the Garage to the Brown Motor Company's lot. After the State had rested, counsel for defendants made a motion to dismiss the action upon the ground that there was no evidence in the record that defendants stole the Dodge coupe and that the evidence failed to show possession of recently stolen property under that part of section 103-36-1, U. C. A. 1943 providing:

"* * * Possession of property recently stolen, when the person in possession fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt."

The defendants' motion was denied and the only error assigned is the court's ruling on this motion.

The difficult question in this case is whether defendants were in possession of the 1947 Dodge coupe, and not whether there is direct evidence in the record proving or tending to identify the defendants as the persons who stole the Dodge coupe. Under Sec. 103-36-1, U. C. A. 1943 ■ an accused may be convicetd of larceny without direct proof identifying him as the thief, if he is found in possession of recently stolen property and fails to give a satisfactory explanation of how he acquired such possession. Many convictions of the crime of larceny have been affirmed in this Court when there has not been any evidence connecting the defendant with the theft apart from his possession of

the stolen goods. The legislature has said that such possession, if not reasonably explained, is sufficient to support such a conviction. Inasmuch as the State in this case offered no testimony directly connecting the defendants with a felonious taking or asportation, the only basis upon which the conviction may be upheld is upon the theory that defendants were in possession of recently stolen property and failed to make a satisfactory explanation.

The facts concerning the felonious taking are these: The copartners of the North Temple Garage, Williams and Capps, both testified that they were present and personally watched the unloading of the Dodge coupe at the Garage on Saturday, October 25, 1947, that neither of them released the automobile nor authorized anyone else to release it at any time and that it was not until Monday morning that they discovered it was gone. Their search for the automobile Monday morning began when a Lyman Motor Company employee presented the claim check for the Dodge coupe and in attempting to deliver the automobile they discovered it was not in the garage. They immediately contacted Francis Crompton, the Sunday attendant, to ascertain whether he had released the automobile and learned from him that he had not released the Dodge coupe to any one, by claim check or otherwise. Mr. Terry, sales manager of Lyman Motor Company, testified the Dodge coupe was still in the garage at 9 o'clock Sunday morning when he checked it. It thus appears that the automobile was taken from the garage by some one on Sunday October 26, 1947 between 9 o'clock in the morning and 3:30 oclock in the afternoon— the latter being the time defendants were apprehended by the police. Francis Crompton, the Sunday attendant, testified he was on duty from 7 o'clock in the morning until 5 o'clock in the afternoon; that his duties required him to wash and grease cars so that he was not always able to observe the entry and departure of all cars; and that he had not released the Dodge coupe to any one. Explanation of how the automobile could have been taken unnoticed from the garage

was made by Mr. Williams, one of the co-owners. He testified that the North Temple Garage is a storage garage; that they have numerous weekly and monthly customers who use the garage at their pleasure; and that these customers retain their own keys and no claim checks are issued on the automobiles of this type of patron. He further testified that the extra safeguard for the protection of automobiles stored for Lyman Motor Company was the practice of placing the keys to such automobiles in a desk drawer of an office which was locked when not in use. Notwithstanding this, someone entered the locked office, secured the keys to the Dodge coupe and without authorization from either the co-owners of the Garage, the Sunday attendant, or the Lyman Motor Company, succeeded in driving the automobile away unnoticed. The state's evidence, thus adduced, is evidence from which the jury could find beyond a reasonable doubt that the car was stolen.

When the defendants were apprehended by Officers Ferguson and Adams, they made a false explanation of their connection with the stolen automobile and neither of them took the witness stand at the trial to make any other or further explanation. The sole remaining question therefore is whether defendants were in possession of the automobile within the meaning of the statute. Concerning what is sufficient possession to give rise to an inference that the one in possession is the thief, we have held that it must be a personal, conscious and exclusive possession, *State* v. *Butterfield*, 70 Utah 529, 261 P. 804, and that the mere association of a defendant with property recently stolen is insufficient. *State* v. *Barretta*, 47 Utah 479, 155 P. 343; *State* v. *Kinsey*, 77 Utah 348, 295 P. 247. We have also held that merely proving constructive possession of recently stolen property will not sustain the burden inasmuch as it would be pushing the rule too far to require of one accused of a crime an explanation of his possession of the stolen property, when possession could also, with equal right, be attributable to another. *State* v. *Kinsey*,

supra; *State* v. *Morris,* 70 Utah 570, 262 P. 107. Although the mere presence of an accused person at the place where the stolen property is found does not amount to possession of stolen property within the meaning of the statute, under our prior rulings, it is not necessary to show that an accused is in physical possession of the stolen goods. *State* v. *Brooks,* 101 Utah 584, 126 P. 2d 1044.

In *State* v. *Kinsey,* supra [77 Utah 348, 295 P. 249], we stated the following principles:

"* * * Possession of articles recently stolen, when coupled with circumstances of hiding or concealing them, or of disposing or attempting to dispose of them, or of making false or unreasonable or unsatisfactory explanations of the possession, may be sufficient to connect the possessor with the commission of the offense. But mere or bare possession when not coupled with other culpatory or incriminating circumstances, does not alone suffice to justify a conviction. (Citing cases.) * * * Further, the authorities also are to the effect that the possession must not only be personal, exclusive, and unexplained, but must also be conscious, or a conscious assertion of possession by the accused. (Citing cases.) * * *"

Although defendants in the case at bar, when arrested were neither in the automobile nor driving it, we have some additional facts connecting defendants with the stolen property. The car had been driven onto the lot without license plates and had been parked near a metal garage toward the rear of the lot some distance away from and facing opposite to the cars on display. The license plate that had been detached from the Ford automobile was found directly in front of the Dodge coupe. Defendant Lloyd when first seen was arising from a crouched position at the rear of the Ford automobile and when apprehended he was arising from in front of the Dodge coupe. The detached license plate on the ground was located at the place where Lloyd arose and this would be the ordinary location for a plate about to be affixed to the front end of the car. Defendant Dyett had partly succeeded in removing the other plate from the Ford automobile. The Dodge coupe had been driven

some eight or nine blocks without license plates and before it could be driven much farther without the driver taking an unreasonable risk of being apprehended, it had to be equipped with plates. Defendants' possession of the Dodge coupe was personal in that they were in the act of readying the car for further driving. It would be most extraordinary to affix or attempt to affix stolen license plates to a car which was without plates of its own and claim such act was not indicative of some control or possession of the vehicle. While the lot was open, the time was Sunday afternoon, the elapsed time between the theft and the discovery was short and no one else was seen around or on the lot. The owner or operator of the business testified he had no knowledge of the car being there, that he had not authorized the defendants to be on the premises and that he had not authorized them to remove, replace or change any license plates.

While the foregoing facts and circumstances are sufficient to permit the jury to find the defendants to be in possession of the automobile, there are additional incriminating and culpatory statements made by defendants from which the jury could find false and untruthful explanation of their presence around or near the Dodge coupe. It was the only vehicle on the premises about which defendants could have had a guilty knowledge. All other cars were properly there and the activities of the defendants were directed away from the other cars and toward the Dodge. When defendant Dyett was questioned as to why he was on the premises, he stated he was inspecting a license plate. Defendant Lloyd gave an assumed or fictious name. When the officer stated the Dodge coupe would have been a fine car to get away with, defendant Lloyd stated he would be able to clear up the suspicious circumstances as he was an employee of Ray W. Brown, the owner of the business. It subsequently developed that this claim was false.

Contrary to defendants' contention, we believe this evidence of possession sufficient to submit the question to the jury. For us to hold that defendants' acts were not posses-

sory but at the most indicated only an attempt to commit a crime embodies the unwarranted assumption that in a relatively short period of time a theft had been committed the car driven a distance in excess of a mile, the car abandoned by the driver and the defendants happening on the scene to equip the car so that a second larceny could be committed.

There being sufficient facts from which the jury could find beyond a reasonable doubt that the car had been recently stolen, that the defendants were in possession of the car and that they had failed to satisfactorily explain how they obtained possession, the trial court did not err when it refused to direct a verdict.

There being no other assignment of error, we affirm the judgment.

McDONOUGH, C. J., and PRATT and WOLFE, JJ., concur.

WADE, Justice (concurring).

I concur.

The evidence shows that defendants, at the time they were arrested, were in the act of commencing to place a license plate, which had been removed from a Ford car parked on a used car lot, on a Dodge coupe which was parked on that lot. These facts alone do not show that defendants had possession of the Dodge coupe, but only tend to show that they intended to take possession thereof. However, as the prevailing opinion points out, there were other facts which bear on this question: The Dodge coupe had been stolen a few hours previously from a garage some nine blocks away and had been taken to and parked on that used car lot; it was without license plates and the ignition key was in the car. Under those circumstances, the fact that the defendants were in the act of commencing to place these plates on the stolen car strongly tends to prove that

they had driven it onto the lot and parked it therefor that purpose. It would be extremely unlikely that some one else parked the car there and left it with the keys in it and then later these defendants came along and sized up the situation and decided to place the license plates on the stolen car and drive it away. From these facts the jury could reasonably find that there was no reasonable doubt that defendants had brought the stolen car and parked it on this parking lot. If such were the facts, then the defendants in bringing the car onto the parking lot clearly had personal and exclusive possession of it. I therefore concur with the prevailing opinion.