## LITTLE v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 19, 1953.

Rehearing Denied Nov. 13, 1953.

Henry L. Rudd, Mt. Sterling, for appellant.

J. D. Buckman, Jr., Atty. Gen., and Squire N. Williams, Jr., Asst. Atty. Gen., for appellee.

SIMS, Chief Justice.

Ray Little was convicted of knowingly receiving stolen property worth in excess of .$20 and was sentenced to the penitentiary for two years. He assigns but one ground for reversal of the judgment, the evidence .is insufficient to sustain the verdict and his motion for a peremptory instruction should have been sustained.

The bill of exceptions, which is in narrative form, shows these facts. The Commonwealth proved that O. T. Asbury, one Sunday morning, noticed a truck with a "load of stuff" on it "stuck in the creek". Thereupon, he notified Fred Cable, deputy sheriff of Wolfe County, who pulled the vehicle out of the creek and into the yard of the county jail. Cable recognized the truck as one which Ray Little had been driving and he went to Little's home and told him of having found it. Little stated to him the vehicle had been stolen.

Granville McIntosh, a mechanic in the Chevrolet garage in Campton, testified that around midnight on Saturday a person named Creech came to his home, saying he had bought a truck from a man by the name of Little and it was stuck in the creek and he wanted the witness to pull him out. McIntosh did not know Creech and refused the job. The Commonwealth proved appellant's general reputation for morality was bad, but it was shown—we imagine on cross-examination—he had never before been in trouble.

Mitchell Roark identified a winch on the truck as one which had been stolen from him. Little was not seen around the truck which had no ignition key in it and had been wired to start without a key. There were tracks showing more than one person had been trying to dislodge the truck.

Appellant admitted it was his truck which was "stuck in the creek." He testified he had been in Campton all afternoon and evening on Saturday loafing around a poolroom and went to a picture show that night; when he went to get his truck, which had been parked near the Chevrolet garage in Campton, about 11 o'clock to go to his home in the country, it was not there; he thought perhaps his brother had returned from Ohio and seeing the truck had driven it home; that he (appellant) had the keys to the truck in his pocket.

Appellant introduced as his only witness his friend, Arlyn Allen, who had seen ap-

pellant around the poolroom and who drove appellant home about 11 o'clock that night. On cross-examination appellant was asked why he did not report to the officers his truck had been stolen when he discovered it was not at his home. His answer was that Allen had left and appellant had no way to get back to town.

It is insisted by counsel for appellant that the evidence does no more than point the finger of suspicion at him, and under Gossett v. Com., 274 Ky. 215, 118 S.W.2d 528, and De Attley v. Com., 310 Ky. 112, 220 S.W.2d 106, a verdict should have been directed in his favor. The Commonwealth argues that as the stolen property was found in appellant's possession, the burden was on him to explain to the satisfaction of the jury how he came into possession of it, citing such cases as Abshire v. Com., 281 Ky. 470, 136 S.W.2d 567, and Cole v. Com., 246 Ky. 149, 54 S.W.2d 674.

As we view the case at bar neither the theory of appellant nor that of the Commonwealth correctly states the law.

In the Gossett case there was no evidence that accused had sold the whiskey, and in the De Attley case there was no evidence that accused had whiskey in his possession for the purpose of sale. We wrote in each case that while evidence of bad reputation was admissible as substantive evidence in prosecutions for violating the prohibition laws, it alone is not sufficient to sustain a conviction. And it was said in each of those opinions that evidence of a bad reputation coupled with mere conjecture or suspicion of guilt, is not sufficient to sustain a conviction.

■ However, in the instant case the evidence amounts to more than a mere conjecture or suspicion of appellant's guilt. His truck was found "stuck" in the creek with stolen property in it and his testimony as to how the truck got there is not at all convincing. While the possession of the stolen property by appellant in the circumstances here presented is not such as to be prima facie evidence of his guilt under KRS 433.290, it was incumbent upon him to

explain how his truck got out of his possession, just as he would any other suspicious circumstance. Appellant testified he thought his brother might have come back from Ohio and driven it home, since his brother had done this on different occasions. When appellant got home and did not find his truck, he did not show enough concern to report to the officers that it had been stolen. True, he testified his friend Allen, after driving him home, had left and appellant had no way to get back to town. But the jury with much reason might have inferred from the evidence that appellant should have been sufficiently concerned over his truck to have had Allen to wait a few minutes until appellant could ascertain whether the truck had been brought home. Usually, men are not so indifferent and nonchalant about a thing as valuable as a truck when it is missing as not to ascertain immediately upon arriving home if another member of the family drove it home and left the owner of the vehicle in town at night without transportation to his home in the country.

The jury were not compelled to believe the testimony of appellant or of Allen, and reasonably might have inferred from the evidence that after the truck was "stuck in the creek" and could not be dislodged, that appellant, himself, wired around the ignition to make it appear the vehicle had been stolen and operated without an ignition key.

■ We are not in accord with the Commonwealth that the usual rule, where one is found in the possession of stolen property the burden is on him to satisfy the jury as to how he obtained it, applies in this case. It is written in 32 Am.Jur. "Larceny" § 143, p. 1056: "It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property, when such possession could also, with equal right, be attributed to another."

■ The instant case is much like Kenney v. Com., 199 Ky. 79, 250 S.W. 494, 495, where it was held that the possession of stolen property from which guilt might be inferred, "must be personal, and such as

is involved in a distinct and conscious assertion of possession by the accused". Here, as in the Kenney case, the question of the character of appellant's possession of the stolen property, and the inference to be drawn therefrom under all the attendant circumstances, including such explanation as appellant can offer, are questions of fact for the jury. The attendant circumstances are necessarily of controlling weight and the evidence amounts to more than a mere conjecture or suspicion of guilt, and the jury could with a considerable degree of accuracy conclude beyond a reasonable doubt that appellant was guilty of having this stolen winch in his possession.

As there was sufficient evidence to take the case to the jury and support the verdict, the judgment is affirmed.