The **STATE** of Utah, Plaintiff and Respondent,

v.

David Tyrone **SMITH,** Defendant and Appellant.

No. 19283.

Supreme Court of Utah.

Sept. 16, 1986.

Rehearing Denied Oct. 29, 1986.

Connie L. Mower, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Thomas P. Vuyk, Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The appellant, David Tyrone Smith, was convicted by a jury of burglary and theft, both third degree felonies. On appeal he argues: (1) U.C.A., 1953, § 76–6–402 establishes an unconstitutional presumption that one in possession of recently stolen property is guilty of having stolen it and that that presumption is not constitutionally sufficient by itself to support a guilty verdict; (2) his wife should not have been permitted to testify against him over his objection; (3) he was forced to testify to rebut the presumption contained in § 76–6–402 in violation of his Fifth Amendment right not to testify; and (4) other prejudicial evidence was admitted against him. We affirm.

Smith was charged with burglary and the theft of a saxophone worth $850 which belonged to LaRae Francis, who stored it in an apartment house in a locked basement storage unit assigned to her sister, Annette Nielsen. Sometime between December 24, 1982, when Nielsen last visited the storage unit, and December 27, 1982, the day the saxophone was pawned, someone broke into the unit and stole the saxophone. Smith lived nearby. His wife Tonia was staying with a friend in the same apartment complex occupied by Nielsen, where Smith visited her several times.

At trial, Jennifer Kearns, a supervisor at St. Mark's, where Smith lived, testified that she saw the defendant at St. Mark's with the saxophone. He told her that the saxophone was his and that he had used it at a performance the previous weekend. She testified that Smith made no attempt to hide the instrument or to be evasive about it during the conversation. Kearns could not precisely date the conversation. However, Smith admitted the conversation and testified that it occurred on the morning of December 27, 1982. Another supervisor, Tom Webb, testified that sometime, probably shortly after Christmas, he noticed a saxophone in a case in the St. Mark's main office with a piece of paper attached somewhere near the top bearing Smith's full name. The supervisor identified the saxophone by a round white seal on the case which he remembered seeing when the saxophone was in the office. He also was unable to pinpoint the date any more exactly.

Belinda Williams, a friend of both Smith and his wife, Tonia, testified that on December 27 Tonia called her and asked her to pawn something for her. She said Tonia told her that she needed money. When Williams picked Tonia up a few minutes later, Tonia directed her to go to Smith's place to pick up something that he was going to let her pawn. Williams did not know what was to be pawned until Tonia went into St. Mark's and returned with the

saxophone. At first, Tonia indicated that she wanted Williams to pawn a ring. After they arrived at the pawn shop, Williams presented her identification, but the negotiations took place between Tonia and the pawnbroker.

Tonia was allowed to testify, over Smith's objection based on the spousal evidentiary privilege, that he told her he had a saxophone and asked her if she could persuade Belinda to pawn it. She also testified that he told her she could pick the saxophone up at St. Mark's and that he needed money. Tonia further testified that at first she just wanted to pawn her ring but that when she could not get enough money for it, she pawned the saxophone instead.

Smith's version of the facts was substantially different than Tonia's. He admitted he had had possession of the saxophone, but testified that Tonia had given it to him on December 26, 1982, and had asked him to hold it for her until the next day. This evidence contradicted his testimony that he told Kearns, the St. Mark's supervisor, that he either had, or was supposed to have, played the saxophone at a performance in Ogden the previous weekend.

The trial judge instructed the jury, over Smith's objection, as follows (the first paragraph being the language of § 76-6-402(1)):

Utah Law provides that:

"Possession of property recently stolen when no satisfactory explanation of such possession is made, shall be prima facie evidence that the person in possession stole the property."

Thus, if you find from the evidence and beyond a reasonable doubt, that the defendant was in possession of stolen property, that such possession was not too remote in point of time from the theft, and the defendant made no satisfactory explanation of such possession, then you may infer from those facts that the defendant committed the theft.

You may use the same inference, if you find it justified by the evidence, to connect the possessor of recently stolen property with the offense of burglary.

## I.

On appeal, Smith argues that § 76-6-402(1) is unconstitutional because it imposes a statutory presumption of guilt that is not rational and therefore is a violation of due process under *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), and *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). He claims that his convictions were based solely on the statutory presumption and that they therefore must be reversed.

 The defendant is in error. At the outset, we note that the statute, properly construed, does not establish an evidentiary presumption, let alone a presumption of guilt. *State v. Chambers*, 709 P.2d 321, 326–27 (Utah 1985). In *Chambers*, we held that a jury instruction using the language of § 76-6-402(1) was unconstitutional because it "relieve[d] the State of its burden of proof." *Chambers*, 709 P.2d at 327. *See also State v. Pacheco*, 712 P.2d 192 (Utah 1985). An instruction that simply incorporates the statutory language is unconstitutional when the statutory term *"prima facie"* is defined as a presumption, as was the case in *Chambers*. Nevertheless, it is elementary that we read the language of an instruction in light of its immediate context and the context of the instructions as a whole. In the same instruction that incorporated the statutory language of § 76-6-402(1), the trial court carefully stated that the statutory language meant only that *if* the jury found certain facts that "you *may infer from those facts* that the defendant committed the theft." (Emphasis added.) The court also instructed the jury that it could infer a burglary "if you find it justified by the evidence." Thus, the court explained that the statutory language incorporated in the instruction allowed only an *inference* of guilt, and then only if justified by the facts. Indeed, the court

made the same point even more extensively in a later instruction.[1]

We do not believe that the jury, in the face of these instructions, could have reasonably applied the instructions in an unconstitutional manner.

Furthermore, the trial court explained to the jury that possession alone of a stolen object is not sufficient to support a conviction, a rule that has been reiterated in numerous opinions. In *State v. Heath*, 27 Utah 2d 13, 15, 492 P.2d 978, 979 (1972), the Court stated:

> The mere possession of stolen property unexplained by the person in charge thereof is not in and of itself sufficient to justify a conviction of larceny of the property. It is, however, a circumstance to be considered in connection with the other evidence in the case in the determination of the guilt or innocence of the possessor. Such possession is a circumstance tending in some degree to show guilt, although it is not sufficient, standing alone and unsupported by other evidence to warrant a conviction. In addition to the proof of the larceny and of the possession by the defendant, there must be proof of corroborating circumstances tending of themselves to show guilt. Such corroborating circumstances may consist of the acts, conduct, falsehoods, if any, or other declarations, if any, of the defendant which tend to show his guilt.

*See also State v. Clayton*, 658 P.2d 621, 623 (Utah 1983); *State v. Thomas*, 121 Utah 639, 641, 244 P.2d 653, 654 (1952);

*State v. Kinsey*, 77 Utah 348, 352, 295 P. 247, 249 (1931); *Cosby v. Jones*, 682 F.2d 1373 (11th Cir.1982).

Defendant's reliance on *Tot v. United States* and *Leary v. United States* is misapplied. As indicated, the instructions did not permit the defendant to be convicted solely because he was in possession of stolen goods. There was, in fact, other evidence that Smith stole the saxophone. One St. Mark's supervisor saw him with a saxophone and another St. Mark's supervisor saw the saxophone with a piece of paper bearing Smith's name attached to it. Smith admitted having the saxophone in his possession immediately prior to the time it was pawned. His explanation for his possession of the saxophone, that his wife asked him to hold it for her overnight, was inconsistent with her testimony and with his own admission on the stand that he had told the St. Mark's supervisor that he had, or was to have, played the saxophone at a "gig" in Ogden the previous weekend.[2] Belinda Williams testified that Tonia told her Smith had something that he was going to let Tonia pawn and that the object picked up by Williams and Tonia from St. Mark's was a saxophone. In addition, Tonia testified that Smith told her that he had a saxophone, needed money, and wanted her to ask her friend Belinda to pawn it. There was sufficient corroborating evidence to support the permissive inference of guilt.

Lest there be a misunderstanding of our ruling in this case, we emphatically declare that we do not retreat from *Chambers*. The trial court should not have used the statutory language in the instruction for

1. The court also instructed:
 The mere fact that a person was in conscious possession of recently stolen property is not sufficient to justify a conviction of theft. There must be proof of other circumstances tending of themselves to establish guilt. However, such proof need not be established by additional evidence or witnesses if you find that the possession occurred under circumstances which warrants [sic] a finding of guilty. In this connection you may consider the defendant's conduct, any false or contradictory statements, and any other statements the defendant may have made with reference

 to the property. If the defendant gives a false account of how he acquired possession of stolen property this is a circumstance that may tend to show guilt.
 In the absence of evidence as to why the defendant was in possession of recently stolen property, you may infer that the defendant stole the property.

2. This inconsistency is one of the sort of corroborating circumstances which warrant application of the statutory inference. *State v. Heath*, 27 Utah 2d at 15, 492 P.2d at 979.

the reasons stated in *Chambers*. We hold only that the instruction cannot be deemed reversible error in this case in light of the clear explanatory instructions that all that the jury could make of the term *"prima facie"* was a permissible inference.

## II.

■ Smith also claims that § 76–6–402(1) forces a defendant to take the stand in violation of his or her Fifth Amendment right not to take the stand to testify. The United States Supreme Court and other state courts, as well as this Court, have held that the privilege is not violated by such a statute. *E.g., Barnes v. United States,* 412 U.S. 837, 846–47, 93 S.Ct. 2357, 2363–64, 37 L.Ed.2d 380 (1973); *State v. DiRienzo,* 53 N.J. 360, 251 A.2d 99, 110 (1969); *State v. Chambers,* 709 P.2d 321, 325 (Utah 1985). *See also* Annot., 88 A.L.R.3d 1178 (1972); 1 *Wharton's Criminal Evidence,* § 139 at 235 (1972). Smith's decision to testify to rebut the prosecution's case did not violate his Fifth Amendment right. "Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime, increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination." *Barnes v. United States,* 412 U.S. at 847, 93 S.Ct. at 2363.

## III.

■ Smith also argues that his wife's testimony was erroneously admitted because he had a right to prevent her from testifying pursuant to U.C.A., 1953, § 78–24–8, which provides:

There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate. Therefore, a person cannot be examined as a witness in the following cases: (1) A husband cannot be examined for or

against his wife without her consent, nor a wife for or against her husband without his consent; nor can either during the marriage or afterwards be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply ... where it is otherwise specifically provided by law.[3]

In 1971, this Court promulgated Rules of Evidence pursuant to § 78–2–4, which grants this Court power to promulgate rules of procedure and evidence and which nullifies laws in conflict with such rules.[4] Rule 23(2) of those rules states:

An accused in a criminal action has a privilege to prevent his spouse from testifying in such action with respect to any confidential communication had or made between them while they were husband and wife. . . .

This rule provides a more limited privilege than that set forth in § 78–24–8. Pursuant to § 78–2–4, Rule 23(2) nullified § 78–24–8 insofar as it was inconsistent with Rule 23(2). *See especially* Rule 28(2)(e) quoted below. *State v. Benson,* 712 P.2d 256, 258 (Utah 1985); *State v. Bundy,* 684 P.2d 58, 61 (Utah 1984). Smith therefore had no right under § 78–24–8 to bar his wife from testifying, but did have the right under § 78–24–8 and Rule 23(2) to bar her from testifying about any confidential communications between them.

Very little of Smith's wife's testimony concerned confidential communications with Smith. For example, her testimony that she obtained the saxophone from St. Mark's, where Smith lived, that she gave him money after pawning the instrument, and that she and Belinda in fact pawned it was not barred by the privilege. Her testimony as to any conversations between her and the defendant was to the effect that he told her he needed money and that he had a saxophone he wanted her to pawn.

**3.** Smith does not claim a violation of the marital privilege set forth in Utah Constitution Article I, § 12 and § 77–1–6(2)(d), which state: "A wife shall not be compelled to testify against her husband nor a husband against his wife."

**4.** The Rules of Evidence adopted in 1971 were superseded by new rules of evidence which became effective September 1, 1983. However, the old rules were still in effect at the time of Smith's trial, and will therefore be applied in this case.

The trial judge ruled that the privilege was unavailable pursuant to Rule 28(2)(e), which states that neither spouse may claim the privilege

> if the judge finds that sufficient evidence, aside from the communication, has been introduced to warrant a finding that the communication was made, in whole or in part, to enable or aid anyone to commit or to plan to commit a crime or a tort.

The evidence discussed above, aside from the confidential communications, was sufficient in this case to justify a finding that the communications between Smith and his wife were made during the planning or commission of a crime. Therefore, even the more limited spousal evidentiary privilege was not available to Smith to bar his wife's testimony.

### IV.

Smith's other claims are also without merit. He claims that testimony that he lived in a half-way house informed the jury of the fact that he had been convicted of a prior felony. Smith recognizes that under Rule 55 "such evidence is admissible to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity"; however, he claims that no special relevance was demonstrated in this case. In addition, he claims that under Rule 45 the evidence should have been excluded because its prejudice outweighed its probative value.

Contrary to Smith's claim, the trial court only permitted parties and witnesses to refer to his residence as "St. Mark's." Except for Smith's own testimony, no other evidence indicated that St. Mark's was a half-way house. It was not until Smith took the stand that the jury heard that he had previously been convicted of a felony and that his residence was a half-way house. Even then, the judge gave an appropriate cautionary instruction to the jury that the evidence could only be considered in assessing Smith's credibility. Clearly the trial judge dealt with the problem in a proper manner, and the claim of error has no substance.

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.